## Helena Zadroga *v.* Commissioner of Motor Vehicles

Superior Court     Judicial District of     File No. 298450
New Haven

Memorandum filed August 21, 1991

*Carbonella & Walsh,* for the plaintiff.

*P.J. Green,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the defendant.

1

BERDON, J. This is an appeal from the decision of the commissioner of motor vehicles (commissioner) suspending the plaintiff's motor vehicle operator's license for a period of ninety days in accordance with General Statutes § 14-227b (h). Although the plaintiff raises several issues,[1] the court finds that the hearing officer's reliance on inadmissible evidence to support his finding that the police officer had probable cause to arrest the plaintiff and his refusal to allow evidence pertaining to the cause of the motor vehicle accident violated her rights to due process under both the federal and state constitutions and are dispositive of the case.

General Statutes § 14-227b, Connecticut's "Per Se" statute, provides that anyone who operates a motor vehicle in this state is deemed to have given consent to a chemical analysis of the operator's blood, breath or urine if that person is arrested for driving under the influence of intoxicating liquor or for certain other enumerated crimes. If the person arrested submits to the required test and the results of that test indicate that the ratio of alcohol in the person's blood was more than ten hundredths of 1 percent of alcohol by weight at the time of the offense, that person's operator's license is suspended for ninety days. In the present case, the plaintiff was arrested on March 18, 1990, for operating a motor vehicle while under the influence of intoxicating liquor or drugs, or both. After being apprised of her rights and of the consequences of her decision to take the test, she submitted to a breath test (intoximeter test), which resulted in a finding that her blood alcohol was in excess of that permitted under § 14-227b. The commissioner gave the plaintiff notice

---

[1] Included in the issues raised is the constitutionality of General Statutes § 14-227b. Constitutionality of a statute is considered only if necessary for a decision of the case. *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 270, 524 A.2d 621 (1987).

that he intended to suspend her license and that she had the right to a hearing before a hearing officer pursuant to § 14-227b (d).

The plaintiff sought an administrative hearing to contest the suspension. Section 14-227b (f) requires that the hearing be limited to the following four issues, all of which must be found to have existed in order to suspend the license: (1) whether the police officer had probable cause to arrest the person for operating a motor vehicle while under the influence of alcohol (or the other enumerated offenses); (2) whether the person was placed under arrest; (3) whether the person refused to submit to a test or analysis or whether the test results indicated at the time of the offense that the blood alcohol level was in excess of that permitted by law; and (4) whether the person was operating the motor vehicle. The plaintiff contests that there was probable cause to arrest her and stipulated to the existence of the other three issues.

Most of the underlying circumstances of her arrest are disputed, except that the incident arose from the plaintiff's involvement in a motor vehicle accident on March 18, 1990, on East Main Street in Branford. At that time, the investigating police officer arrested her for driving while under the influence. The state offered no live testimony at the administrative hearing. The hearing officer, however, entered into evidence, over the objections of the plaintiff, the following completed forms pertaining to the incident: (1) Officer's DWI Arrest and Alcohol Test Refusal or Failure Report (A-44 report), (2) Branford Police Department-Case/Incident Report (C/I report), and (3) police accident report (police report). None of these forms were qualified under any of the established exceptions to the hearsay rule. The commissioner's hearing officer found all four issues in the positive, including the requirement that the police officer had probable cause to arrest the plaintiff for driving while under the influence.

When the matter initially came before the court, the decision of the commissioner to suspend the license was based merely upon conclusional findings of the hearing officer including that "[t]he police officer had probable cause to arrest the . . . [plaintiff] for a violation specified in the statute." The commissioner did not specify any facts upon which this conclusion was based.

The Supreme Court has pointed out the necessity for requiring a finding of fact in order to support the conclusion of a hearing officer. "On appeal, the court must determine whether the appropriate procedure under the statute and the state and federal constitutions was employed . . . and whether the evidence relied upon was reliable and substantial and, if believed, sufficient to establish cause under the statute. . . . Effective judicial review of administrative decisions requires that such decisions be based upon substantial evidence and proper reasons. . . . A court reviewing an administrative determination cannot engage in surmise and conjecture to determine whether the decision was lawfully reached. . . . Thus, under the Model State Administrative Procedure Act, an agency is required to prepare 'findings of fact and conclusions of law, separately stated.' 13 Uniform Laws Annot., State Administrative Procedure § 12 (1980). A similar requirement appears in the Federal Administrative Procedure Act; 5 U.S.C. § 557 (c); and has been adopted with 'remarkable uniformity' in nearly all state courts, irrespective of a statutory requirement." (Citations omitted.) *Lee* v. *Board of Education,* 181 Conn. 69, 81–83, 434 A.2d 333 (1980).

Since it could not effectively review the administrative decision to determine whether it was lawfully reached, the court, on November 20, 1990, remanded the case to the administrative hearing officer for the purpose of making a finding of facts.

In response to the court's remand, the hearing officer made findings that included the following: "The totality of the officer's observations plus the automobile accident provide sufficient probable cause to have arrested Ms. Zadroga. . . ." The court ordered a second remand to the hearing officer in order to obtain the necessary finding upon which the court could make a meaningful review. On March 14, 1991, the hearing officer submitted the following supplemental finding: "On the issues of Probable Cause, I make the following additional subordinate finding of fact: I relied on State's Exhibit A, consisting of the A-44, Test Record Tapes, Case/Incident Report, Police Accident Report and Breath Test Consent Form, in its entirety, in determining my finding of Probable Cause."

Although proceedings before an administrative agency are informal and are conducted without regard to the strict rules of evidence; *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 536, 525 A.2d 940 (1987); due process of law requires that the agency cannot violate fundamental rules of natural justice. *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 249, 470 A.2d 1214 (1984). In order to meet this standard, the administrative agency may only rely upon "evidence which is probative and reliable . . . ." *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429, 429 A.2d 910 (1980). Even if it is assumed, for the sake of argument, that the hearsay reports including the A-44 report were admissible,[2] the hearing officer's reliance upon the test record tapes of the intoximeter denied the plaintiff a fair hearing.

[2] General Statutes § 14-227b (c), requires that the police officer prepare the written report (referred to as the A-44 report in the present case). Section 14-227b-10 (a) of the Regulations of Connecticut State Agencies makes clear that the *arresting* officer prepare the A-44 report ("[t]he arresting police officer shall prepare a written report of the facts surrounding the person's arrest on a form approved by the commissioner"). Agency regulations are

The commissioner concedes that in determining probable cause to arrest the plaintiff, the hearing officer should not have taken into consideration postarrest evidence including the results of the intoximeter. He argues, however, that the decision of the hearing officer must be sustained because it meets the substantial evidence rule even if the intoximeter results are excluded. *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983) (restating test of "substantial evidence rule"). "Under this test, 'the mere erroneous admission . . . of evidence will not invalidate an order of the commission. Substantial prejudice must be affirmatively shown.' " *Lawrence* v. *Kozlowski,* 171 Conn. 705, 714, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977), quoting *Damariscotta-Newcastle Water Co.* v. *Damariscotta-Newcastle Water Co.,* 134 Me. 349, 186 A. 799 (1936).

In *Lawrence,* the court upheld the decision of the commissioner of motor vehicles even though the record contained unreliable evidence because there was other substantial evidence to support his conclusion, which

presumed to be accurate reflections of the legislature's intent articulated in the statute's more general language. *AFSCME* v. *New Britain,* 206 Conn. 465, 470, 538 A.2d 1022 (1988). The reports indicate that Officer Suraci was the arresting police officer. The A-44 report is not signed or sworn to by him and there is no indication that Officer Suraci actually prepared this report. The signature of the police officer is not a mere formality, but it would provide an important layer of trustworthiness on this hearsay document. Furthermore, the C/I report, which is clearly needed in the present case to establish probable cause to arrest, is not signed and merely incorporated by reference in the A-44 report by stating "See C/I Report." Indeed, there is no indication that Officer Suraci prepared the C/I report. Section 14-227b-19 of the Regulations of Connecticut State Agencies allows for the report's admissibility only if it conforms to § 14-227b (c). The "Per Se" statute attempts to establish a simple and clear procedure to be followed. The commissioner, however, has muddied the waters with a report form that is confusing and leaves much to be desired. Although the plaintiff challenges the admissibility of these hearsay reports on these grounds, the court leaves this issue for another day.

evidence was admissible. Likewise, in the present case, if the court was to consider the A-44 report together with the C/I report,[3] without the results of the intoximeter, there would also be sufficient evidence for sustaining the finding of the commissioner. Nevertheless, the similarities between *Lawrence* and the present case end there. In the present case, the hearing officer made a specific finding that he relied upon the results of the intoximeter to determine probable cause. This is not a case where the agency merely " 'incidentally mentions incompetent or irrelevant material.' " *Lawrence* v. *Kozlowski,* supra, 715 n.6, quoting *Braniff Airways, Inc.* v. *Civil Aeronautics Board,* 379 F.2d 453, 466 (D.C. Cir. 1967). Rather, it is a case where the hearing officer admits he relied upon this incompetent evidence to make his finding of probable cause. Clearly, prejudice has been established by the plaintiff.

The prejudice in the present case is further underscored in two respects. The inadmissible evidence relied upon by the hearing officer was not merely one piece of evidence necessary to determine the only contested issue before him. It went to the heart of the sole contested issued—that is, whether the police officer had probable cause to believe the plaintiff operated her automobile under the influence of alcohol. Reliance on that one inadmissible fact was sufficient to nail down the issue conclusively.

Furthermore, the issue was contested through the testimony of the plaintiff before the hearing officer. The plaintiff testified that the police officer never demonstrated how the field sobriety tests were to be performed, that she was upset, confused and extremely nervous because this was her first accident, that she had no prior involvement with the police, and that she conversed with the arresting officer intelligently and

---

[3] See footnote 2, supra.

answered all questions responsively. The scales could have at least been tipped in favor of the suspension as a result of the hearing officer considering and making his determination on this very prejudicial evidence.

The plaintiff was also denied due process of law when the hearing officer admitted into evidence the police report and prohibited the plaintiff from introducing evidence on how the accident occurred. These errors must again be reviewed in the context that the hearing officer's conclusion that the police officer had probable cause was based, in part, upon the "totality of the officer's observations plus the automobile accident . . ." and the finding that he "relied on . . . [the] Police Accident Report . . . in its entirety . . . ."

Although the police report could have been generally qualified for admission under the business entry exception to the hearsay rule; *Bonner* v. *Winter,* 175 Conn. 41, 43, 392 A.2d 436 (1978); parts of the report are inadmissible under this exception. "Statements and information obtained from volunteers and other persons outside the 'business' are not admissible even though they are included in a business record because it is the duty to report in a business context that provides the reliability to justify this hearsay exception." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.14.5. The narrative section of the police report states, in part, that the plaintiff's vehicle failed to "stop at a stop sign"; the diagram section depicts the path of travel of each vehicle prior to the collision. The police officer did not witness the accident. Both the narrative and the diagram set forth hearsay that is unreliable and not within the business entry exception or any other exception to the hearsay rule.

During the administrative hearing, the hearing officer prohibited the plaintiff from testifying as to the

cause of the accident.[4] Since the hearing officer relied in part upon the accident and, therefore, the cause, for a determination of probable cause, it was error on his part to prohibit the plaintiff from giving her side of how the accident occurred. It is clear that "at the hearing no one may be deprived of the right to produce relevant evidence . . . ." *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 569, 345 A.2d 520 (1973); General Statutes §§ 4-177 (c) and 4-178 (3). By relying on the accident, the hearing officer made it very relevant.

---

[4] When the plaintiff attempted to introduce, through a photograph of the scene, her version of the accident the following colloquy occurred:

"Mr. Gutis [Hearing Officer]: What's the relevance?

"Mr. Walsh [Plaintiff's Counsel]: The relevance would come in after the accident.

"Mr. Gutis: You've already admitted to operation. I'm not sure what the relevance of putting pictures in of the sign is or of the site is.

"Mr. Walsh: Well, this would be as to—in the accident report which was admitted into evidence it states that Ms. Zadroga was given a ticket for, I believe it was, failure to obey a stop sign.

"Mr. Gutis: Nonetheless, you've stipulated to operation. Ms. Zadroga has admitted to operation and the officer's probable cause to arrest for driving while intoxicated, was odor of liquor and failure of the performance test. I see no relevance to the pictures.

"Mr. Walsh: The relevance would be that the officer's basis for arresting her was not on the test given . . . .

"Mr. Gutis: Whether or not there was a fault to the accident, the officer has noted in his report that that was not his probable cause to arrest for DWI. He notes [the] odor of liquor and [alcohol] breath, [and] failing the field performance test. The other box is blank and there is nothing written in.

"Mr. Walsh: We also have a discrepancy as to the failure of the performance test which were given and the basis is that the report is not accurate as to the tests that were given and he formed his opinion on the accident—on his perception of the accident scene and who was at fault rather than the tests that were given.

"Mr. Gutis: There's nothing in his case incident report indicating that that formed any part of his belief and that his probable cause for arrest for DWI. Accordingly, I'm going to exclude those pictures.

"Mr. Walsh: Objection, please."

The court is fully aware of the magnitude of the drunken driving problem in this as well as in all the other states. "The offense of driving under the influence of intoxicating liquor is particularly dangerous . . . ." *State* v. *Boucher,* 207 Conn. 612, 618, 541 A.2d 865 (1988). Nevertheless, in our endeavor to rid our roads of these drivers, who risk not only their own lives but the lives and limbs of innocent victims, we cannot trample on the constitutional rights of other citizens. They are entitled to a fair hearing. A person has the right to be free from unwarranted arrests by the police and a right to a constitutional hearing to determine whether that person violated the law before being deprived of the license to drive. "Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. . . . This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' " *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971).

The plaintiff's appeal is sustained.