## SEAN P. BIALOWAS *v.* COMMISSIONER OF MOTOR VEHICLES
## (15548)

O'Connell, Hennessy and Spallone, Js.

Argued November 13, 1996—officially released April 15, 1997

*Stanley Maxim Lucas,* for the appellant (plaintiff).

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

SPALLONE, J. This is an appeal from a judgment dismissing the appeal of the plaintiff from the administrative decision of the defendant commissioner of motor vehicles (commissioner) made pursuant to General Statutes § 14-227b.[1] The plaintiff claims that the trial

[1] General Statutes § 14-227b provides in relevant part: "Implied consent to test. Suspension of license for refusing to submit to test or having elevated blood alcohol content. Hearing. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both . . . and thereafter, after being apprised of his constitutional rights . . . having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license . . . may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal . . . may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given . . . . The police officer shall make a notation upon the records of the police department that he informed the person that his license . . . may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis . . . and the results of such test or analysis indicate that the ratio of alcohol in the blood of such person is ten-hundredths

court improperly (1) upheld the administrative hearing officer's decision to suspend the plaintiff's license even though the procedures of § 14-227b were not followed, (2) upheld the administrative officer's decision to sus-

of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period and shall issue a temporary operator's license . . . to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement . . . by the arresting officer. If the person arrested refused to submit to such test or·analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis . . . and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.

"(d) Upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license . . . of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license . . . has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that his operator's license . . . is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of the suspension . . . .

"(f) . . . The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced

pend the plaintiff's license on the basis of the plaintiff's so-called failure to perform a breath test successfully, allegedly constituting a "refusal" under § 14-227b, and (3) violated the plaintiff's due process rights under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution by allowing the narrative supplement to the police report into evidence and by the failure of the police to apprise the plaintiff of all of his test results. We reverse the judgment of the trial court.

A review of the record reveals the following. On September 10, 1994, at approximately 2:18 a.m., Officer Joseph Jones of the Norwich police department

within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . .

"(g) If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license . . . . If, after such hearing, the commissioner does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (h) of this section. The commissioner shall render a decision at the conclusion of such hearing or send a notice of his decision by bulk certified mail to such person not later than thirty days . . . from the date such person received notice of his arrest by the police officer. . . .

"(h) The commissioner shall suspend the operator's license . . . and revoke the temporary operator's license . . . issued pursuant to subsection (c) of this section, of a person . . . against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section . . . for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, or (B) six months if such person refused to submit to such test or analysis, (2) one year if such person has previously had his operator's license . . . suspended under this section, and (3) two years if such person has two or more times previously had his operator's license . . . suspended under this section. . . .

"(j) The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable. . . ."

observed the plaintiff driving a motor vehicle in an erratic manner. The plaintiff was driving his pickup truck at a high rate of speed and, while swerving back and forth across the entire width of the road, almost collided with several parked vehicles. Jones pulled over the plaintiff and, on the basis of plaintiff's "glossy eyes," the strong odor of alcohol on his breath, slurred speech, and his failure to perform certain sobriety tests satisfactorily, Jones placed the plaintiff under arrest for operating a motor vehicle while under the influence of alcohol or drugs pursuant to General Statutes § 14-227a.

Jones transported the plaintiff to police headquarters and made three attempts, using an intoximeter, to administer a breath test to the plaintiff. Jones stated in the narrative supplement that the plaintiff "was explained all necessary procedures but failed to give a sufficient breath sample on three separate occasions . . . [t]herefore resulting in a refusal of the test." He filled out an A-44 police report form as well as a narrative supplement to that form and stated in the supplement that the plaintiff "was very uncooperative and would not sign any necessary papers."

Pursuant to § 14-227b (c), a written report of the plaintiff's arrest and alleged test refusal was forwarded to the department of motor vehicles (department). Thereafter, the plaintiff was notified by the commissioner that his operator's license was to be suspended for a period of six months because he refused to be tested. He was also notified that he was entitled to a hearing to contest the suspension.

The plaintiff requested and was given an administrative hearing. The hearing officer admitted into evidence, over the objection of the plaintiff, the police report, the narrative supplement to the police report, and a breath test result tape from the intoximeter. Jones did not testify. The plaintiff testified that he did not refuse to

take a breath test. He testified that he did refuse to sign the temporary operator's license[2] because he was "upset." He said that he had taken three tests and that Jones had changed the intoximeter nozzle between the first and second tests. The plaintiff testified that, after the first test attempt, Jones had said that they would attempt another test. After the second attempt, according to the plaintiff, Jones said, "Try again." The plaintiff testified that, after the third attempt, Jones had said, "That's enough." The plaintiff also testified that he had not been told that he was not blowing hard enough or that his actions were being treated as a test refusal.[3]

The hearing officer found that the mandates of § 14-227b were satisfied and ordered that the plaintiff's license to operate a motor vehicle be suspended for six months. In making her decision, the hearing officer made subordinate findings that the plaintiff's "conduct was properly deemed a refusal by the police officer, as his failure to sign the temporary license and other documents supports a lack of cooperation."

---

[2] Section 14-227b-9 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "If the person arrested has a current valid motor vehicle operator's license, the arresting officer, after revoking and taking possession of the person's Connecticut operator's license . . . shall issue to such person a temporary Connecticut operator's license . . . on a form as approved by the commissioner. The temporary operator's license or privilege form . . . shall be signed by the person arrested and by the issuing police officer."

[3] The following exchange took place during the hearing:

"[Hearing Officer]: After the first breath sample, what did the police officer say to you?

"[Plaintiff]: We're going to try another one with this nozzle.

"Q. And then you performed a second one?

"A. Yes.

"Q. What happened?

"A. He said, 'Try it again.' So I did it again, and he said, 'That's enough.'

"Q. Did he make any other comment like you're being treated as a refusal—

"A. No.

"Q. or you're not blowing hard enough?

"A. No."

Pursuant to General Statutes § 4-183, the plaintiff appealed the administrative decision to the Superior Court, claiming that the decision should be reversed because (1) procedural errors were committed by the arresting officer, (2) the plaintiff did not refuse to be tested for his blood alcohol count and (3) the suspension subjected the plaintiff to double jeopardy. The trial court on November 16, 1995, heard the plaintiff's appeal. After summarizing the evidence and arguments,[4] the trial court stated that, "[i]n the court's view, the plaintiff's evidence was clearly more persuasive . . . ." The court nonetheless found that there was substantial evidence on which the hearing officer could reasonably have based her finding and upheld the administrative hearing officer's decision. The trial court also rejected the plaintiff's other legal arguments and dismissed his appeal. This appeal followed.

In an administrative appeal, the plaintiff bears the burden of proving that the commissioner's decision to

[4] Regarding the evidence and arguments, the trial court stated the following: "The essential basis [of] the plaintiff's appeal is his contention that there was insufficient evidence that supported the hearing officer's finding that the plaintiff refused to submit to the required test. The evidence on this issue consisted of the A-44 police report, a narrative supplement, and . . . the plaintiff's testimony. In the police report the arresting officer states that the plaintiff was uncooperative. He further states that the plaintiff 'failed to give a sufficient breath on three separate occasions, therefore resulting in a refusal of the test.' The police officer also stated the plaintiff refused to be tested and that statement is endorsed by another police officer who signed the form.

"In opposition to the evidence summarized above, the plaintiff testified that he tried to blow into the intoximeter machine on several occasions. He testified that he did not refuse to take [the] test. He indicated that there was some evidence that the machine was not working properly, and that the mouthpiece had to be replaced. In his argument to the [trial] court the plaintiff points out that the officer failed to check the block on the A-44 report form indicating that he was certified to operate the intoximeter machine. The plaintiff also pointed out that the police attached only one machine tape to their report which indicated some inconsistency with their statements that the plaintiff failed to provide enough breath to record on the machine."

suspend a motor vehicle operating privilege was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. *Schallenkamp* v. *DelPonte*, 229 Conn. 31, 39, 639 A.2d 1018 (1994); see *Lawrence* v. *Kozlowski*, 171 Conn. 705, 713–14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Schallenkamp* v. *DelPonte*, supra, 40. "The evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Internal quotation marks omitted.) *Marshall* v. *DelPonte*, 27 Conn. App. 346, 352, 606 A.2d 716 (1992). "[I]f the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 601, 590 A.2d 447 (1991). The obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it.

I

The plaintiff's first claim is that the trial court improperly upheld the administrative hearing officer's decision even though the procedures of § 14-227b were not followed. Specifically, the plaintiff claims procedural errors in that (1) he was not advised of his constitutional rights, a requirement of § 14-227b (b); (2) he was not informed that he would lose his license if he refused

to submit to testing or that the test results or a refusal to take the tests could be used against him in a criminal prosecution, a further requirement of § 14-227b (b); (3) he never received the results of the second and third breath tests, as per § 14-227b-8 of the Regulations of Connecticut State Agencies;[5] (4) there is no indication that all the test results were mailed to the department as required by § 14-227b (c); (5) there is no indication that the police report and accompanying documents were mailed to the department within three business days,[6] as further required by § 14-227b (c); and (6) the narrative supplement to the police report was not marked as having been made under oath. The plaintiff argues that, because a police report must conform to the requirements of § 14-227b to be admissible, this nonconforming report was inadmissible. Thus, the plaintiff argues, he has met his burden of demonstrating that no evidence exists because, without the police report and the accompanying documents, no admissible evidence was offered at the administrative hearing to support the hearing officer's conclusion.

This claim fails for three reasons. First, § 14-227b (f) does not provide for an adjudication of claimed procedural errors but expressly provides that "[t]he hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such

---

[5] Section 14-227b-8 of the Regulations of Connecticut State Agencies provides: "The person who has submitted to a chemical analysis, or the person's attorney, will be afforded access to the test results by the department prior to a scheduled hearing."

[6] The plaintiff offered evidence that the mailing date stamped on the records sent to the department was September 14, 1994, at 3:14 p.m. The plaintiff was arrested on September 10, 1994, at 2:14 a.m.

person refuse to submit to such test . . . and (4) was such person operating the motor vehicle. . . ." The language of § 14-227b (f) is plain and unambiguous. The hearing is expressly limited to the four issues enumerated above. *Buckley* v. *Muzio*, 200 Conn. 1, 6, 509 A.2d 489 (1986). The hearing officer made the findings mandated by law[7] and was not required to do more.

Second, our Supreme Court has held that "even multiple failures on the part of an arresting officer to comply with the statutory dictates of § 14-227b [are] not sufficient grounds for overturning the commissioner's determination, after a hearing, that the essential elements of the statute had been proven and that the plaintiff's operator's license should be suspended." *Schallenkamp* v. *DelPonte*, supra, 229 Conn. 41–42; see *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987). That license suspensions hearings are limited to the four issues specified in subsection (f) of § 14-227b indicates that the legislature did not intend compliance with either subsection (b) or subsection (c) to be an essential condition for suspension. See *Volck* v. *Muzio*, supra, 514, 517.[8]

---

[7] In this action the hearing officer made the express written findings as follows:

"1. The police officer had probable cause to arrest the above-named operator [the plaintiff] for a violation specified in [General Statutes § 14-227b (b)].

"2. The operator was placed under arrest.

"3. The operator refused to submit to such test or analysis.

"4. Said person was operating the motor vehicle."

[8] In addition, claims of statutory noncompliance involving two of these specific types of allegations—failure to warn of the consequences of refusal and failure to mail the arresting documentation to the department within the three day period—have previously been rejected on appeal. The Connecticut Supreme Court has rejected the idea that a license suspension should be overturned for failure to warn of the consequences of test refusal. "[I]n a license suspension appeal it is not necessary to determine whether a driver had been adequately warned of the consequences of his refusal to submit to the prescribed tests " *Weber* v. *Muzio*, 204 Conn. 521, 523, 528 A.2d 828 (1987); *Volck* v. *Muzio*, supra, 204 Conn. 520. In both *Volck* and *Weber*, the alleged procedural defects included the officers' failure to warn the motorists of the consequences of their refusal to submit to testing. This court has

Third, though there is merit, in theory, to a claim of procedural error that bears on the police report's reliability, the failure to check a box indicating that the narrative supplement to the report was made under oath does not nullify other indications on the police report signifying that such additional materials were made under penalty of false statement.

The issue of whether a police report was made under oath goes to the question of reliability of the report. Administrative tribunals are not "strictly bound by the rules of evidence . . . so long as the evidence is reliable and probative." *Lawrence* v. *Kozlowski*, supra, 171 Conn. 710. Compliance with § 14-227b (c) is designed to provide "sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer." *Volck* v. *Muzio*, supra, 204 Conn. 518. If the report did not include such indicia of reliability, the report would not be admissible even before an administrative tribunal of this type.

The plaintiff is correct in stating that, on the police report, there is no check in the box next to the line that states "[i]n addition to this completed A-44 form, this report includes supplemental, explanatory material, attached hereto and subject to the oath requirement." This alone, however, fails to demonstrate that

affirmed a trial court's ruling upholding an administrative hearing officer's decision to suspend a motorist's license despite a claim that the police report was not mailed to the commissioner within three business days. *Peters* v. *Dept. of Motor Vehicles*, 26 Conn. App. 937, 601 A.2d 1 (1992), affirming *Peters* v. *Dept. of Motor Vehicles*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 701413 (July 11, 1991) (4 Conn. L. Rptr. 391); cf. *Yanni* v. *DelPonte*, 31 Conn. App. 350, 354, 624 A.2d 1175 (1993) (holding that commissioner's mailing of notice of suspension by bulk certified mail, rather than certified mail as required by General Statutes [Rev. to 1993] § 14-227b [g], was not grounds for invalidating suspension).

the supplemental material was not made under oath. In fact, the document bears sufficient indicia of reliability to justify its admission as evidence in this type of administrative hearing. The police report was signed and sworn to under oath. The arresting officer, by signing and swearing to the report under oath, indicated the narrative supplement was also signed under oath and sworn to. This is clear from two prepared statements on the report. The first is in the instructional portion of the form that directs the reporting officer to "[a]ttach additional sheets or materials necessary to explain portions of this Report. Such attachments are considered part of this Report and are approved by the Commissioner. The statements and information contained therein are subscribed and sworn to under penalty of false statement." The second is in § 1, oath, which states that "[t]his report of chemical alcohol test or refusal and the above noted attachments hereto are subscribed and sworn to by me, the arresting officer, under penalty of false statement . . . ." The fact that the arresting officer failed to check the box indicating that the report includes attachments does not negate these statements or the arresting officer's signature, which, together, indicate the report in full, i.e., the A-44 report as well as the attachments, is made under penalty of false statement.[9]

## II

The plaintiff next claims that there was not substantial evidence presented at the administrative hearing to support a finding of refusal to submit to the intoximeter test. We agree that, on the basis of the facts and circumstances of this case as presented before the administrative hearing officer, there was not substantial evidence to support a finding of refusal.

---

[9] Each page of the narrative supplement also bears the signature of the arresting officer.

The plaintiff supports this claim by stating that there was no evidence that the plaintiff either refused to take the test or that the plaintiff intentionally failed to perform the test. In contrast, the plaintiff points out, there was evidence that he took the test. He claims that there was no indication that the testing device was properly checked for accuracy nor was there any indication that the officer who attempted to administer the tests was certified to operate the machine.[10] The plaintiff states that it is unclear what the results of the second and third tests were.[11] He also makes the argument based on *Dorman* v. *DelPonte*, 41 Conn. Sup. 437, 440, 582 A.2d 473 (1990), that lack of cooperation alone does not constitute refusal to take the test. Finally, the plaintiff claims that, in the absence of a statutory definition of "refuse," the hearing officer failed to apply the commonly approved usage of the word.

We hold that where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not

[10] The plaintiff correctly points out that the arresting officer did not check the box on the A-44 police report form stating that the "[a]nalytical device was certified, analytical device was operated by a certified operator, and analytical device was checked for accuracy in accordance with applicable state regulations."

[11] The A-44 police report form has two sections where arresting officers may fill in intoximeter test results. In the section marked "First intoximeter test," the arresting officer in this case listed the time as 2:45 a.m., the date as September 10, 1994, and the result as "aborted." In the section marked "Second intoximeter test," the arresting officer left the time and result sections blank and filled in the date but then crossed it out.

The intoximeter test result tape, which bears the signature of the arresting officer and was attached to the A-44 police report, shows the following:

| "Test | Value | Time |
| --- | --- | --- |
| BLK | .000 | 02:47 |
| EXTSTD | .096 | 02:48 |
| BLK | .000 | 02:49 |
| STD | .098 | 02:49 |
| BLK | .000 | 02:50 |
| INSUFF. BREATH" | | |

automatically constitute refusal within the meaning of § 14-227b. Such refusal must be supported by substantial evidence. A conclusory statement by the arresting officer that the driver has failed to provide an adequate breath sample and has, therefore, refused, does not constitute such evidence.

It is not in dispute that the plaintiff orally consented to take the breath alcohol test. It is also not disputed that the plaintiff attempted three times to take the test. The arresting officer inferred that the plaintiff refused to be tested by not furnishing sufficient breath samples to enable a measurement of his breath alcohol levels. The arresting officer provided no information to support this inference adequately. There are grounds for this conclusion from only four other evidentiary sources: (1) the portion of the police report that states that the plaintiff's "refusal" was witnessed by a second officer; (2) the portion of the police report that lists "aborted" as a result of the first intoximeter test; (3) the intoximeter test result tape, attached to the police report, that reads "insuff. breath"; and (4) the narrative supplement, where the officer noted that the plaintiff "was very uncooperative and would not sign any necessary papers." Together, these sources do not amount to substantial evidence for a finding of refusal. With respect to the notation that the plaintiff was very uncooperative, an overall failure to cooperate, without additional details, cannot be generalized to show a lack of cooperation in a specific respect and, in fact, appears to relate to his refusal to sign the temporary license. As in *Dorman* v. *DelPonte*, supra, 41 Conn. Sup. 442–43, "[e]ven if intentional refusal of the driver to cooperate is a refusal to take the test within the meaning of the statute, the hearing officer never made a finding that the plaintiff intentionally failed properly to perform the test. The record does not support the finding even if the hearing officer entirely disregarded the plaintiff's

testimony. . . . [T]he police officer's *opinion* that the plaintiff did not blow forcefully enough into the machine . . . is only a conclusion without any underlying, stated *factual* basis in the record." (Emphasis in original.)[12] In addition, it is unclear whether the remark that the plaintiff was "very uncooperative" referred only to the plaintiff's refusal to sign the documents or also to the plaintiff's conduct during the test attempts. The other sources of information do not necessarily show that the plaintiff's failure to provide sufficient breath was a result of a lack of cooperation by the plaintiff. There is no indication whether the plaintiff was, in fact, trying to provide a sufficient breath sample and was unable to do so, whether the machine was working improperly or whether the plaintiff was deliberately withholding his breath. Also, as the trial court correctly noted, the plaintiff pointed out that the arresting officer provided a single intoximeter test result tape "which indicated some inconsistency with their statements that the plaintiff failed to provide enough breath to record on the machine."

The police officer did not include in the police report or the narrative supplement adequate information about his observations to support his conclusion that the

---

[12] In *Dorman* v. *DelPonte*, supra, 41 Conn. Sup. 440, the trial court stated: "The limited evidence before the hearing officer establishes the uncontested fact that the plaintiff was offered the breath test six times and that each time, the intoximeter failed to register an adequate reading. Nothing in the record indicates that the intoximeter was working properly at the time. Even if the plaintiff's testimony at the hearing is disregarded, other evidence in the record shows that he did consent to take the test, and did so six times. The police officer preparing the narrative report was of the opinion that the plaintiff did not blow hard enough to cause the machine to register, but the report fails to indicate the degree of effort made by the plaintiff, whether he was intentionally holding back, or whether another person could have caused the machine to register a reading given the condition it was in at the time. The officer reached his own conclusion that the plaintiff was uncooperative and the officer construed this to be a refusal to take the test. This is not a factual conclusion that either the hearing officer or the court must accept. The police officer's opinion is speculation . . . ."

plaintiff's failure to provide sufficient breath was, in fact, a refusal to take the test. Such information, if it existed, could have been provided through testimony or other evidence such as the narrative supplement and might have described the officer's observations of the effort the plaintiff made in providing breath samples and in following the officer's instructions, or other conduct of the plaintiff that would bear on whether his actions were intentional.[13] Without adequate information to form a basis for the police officer's inference, therefore, there was not substantial evidence for the hearing officer to determine whether the plaintiff's actions constituted a refusal.

The hearing would appear to be only the barest of formalities if it were sufficient for the arresting officer to check a box and provide no substantiating data. The informed consent statute "does not give the police or the hearing officer the authority to determine that a refusal to take the test . . . occurs when the driver consents to take the test and fails to perform it properly"; *Dorman* v. *DelPonte*, supra, 41 Conn. Sup. 443; and there is insufficient evidence here to support the decision of the police or hearing officer that there was a refusal to take the test. The statute does not authorize the administrative hearing officer to credit a conclusory determination by the police officer that the driver's failure to provide an adequate breath sample, without more, constituted a refusal.[14] See id.; see generally *State* v. *Barlow*, 30 Conn. App. 36, 44, 618 A.2d 579 (1993).

[13] We note, however, that a finding of intent may be unnecessary to reach a decision that a motorist's conduct in failing to provide adequate breath samples constituted a refusal under § 14-227b. This is because such a requirement could render § 14-227 "functionally unworkable." *Buckley* v. *Muzio*, supra, 200 Conn. 7. The Connecticut Supreme Court stated in *Buckley* that "[a] refusal to submit to chemical testing for purposes of an administrative sanction need not be knowing and intelligent, for it is not analogous to the waiver of constitutional rights by a person accused of a crime." Id., 8.

[14] The plaintiff argues that failure to give a sufficient breath sample is, as a matter of law, not evidence of a failure to cooperate and, thus, in effect, cannot support a conclusion that the plaintiff refused to take the test. In

This court is aware of the "carnage associated with drunken drivers." *State* v. *Stevens*, 224 Conn. 730, 739, 620 A.2d 789 (1993). "Nevertheless, in our endeavor to rid our roads of these drivers . . . we cannot trample on the constitutional rights of other citizens. They are entitled to a fair hearing." *Zadroga* v. *Commissioner of Motor Vehicles*, 42 Conn. Sup. 1, 10, 597 A.2d 848 (1991). "An operator's license is a privilege that the state may not revoke without furnishing the holder of the license due process as required by the fourteenth amendment. *Bell* v. *Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)." *State* v. *Hickam*, 235 Conn. 614, 626, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996).

In the present case, we conclude that the evidence in the record does not support the hearing officer's determination that the plaintiff "refused" to submit to the required test within the meaning of § 14-227b. Having so concluded, we need not address the plaintiff's third claim of error.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the appeal of the plaintiff.

In this opinion the other judges concurred.

certain circumstances, it may be possible that evidence of failure to give a sufficient breath sample may be evidence of refusal, if supported by an adequate basis in facts supplied to the administrative hearing officer. Such evidence, however, is not per se refusal.

The plaintiff also argues that, in the absence of a statutory definition of "refuse," the hearing officer failed to apply the commonly approved usage of the word. Recently, this court ruled on the definition of "refuse" in the context of General Statutes § 14-227a. *State* v. *Corbeil*, 41 Conn. App. 7, 18–19, 674 A.2d 454, cert. granted on other grounds and appeal dismissed, 237 Conn. 919, 676 A.2d 1374 (1996). There we stated: "It is not necessary to define a word that carries an ordinary, commonly understood meaning, is commonly used and is defined in standard dictionaries. . . . The word 'refuse' is defined as 'to show or express unwillingness to do or comply with. . . .' Consequently, the dictionary definition makes it clear that 'refusing' to take a breath test *may be accomplished by a failure to cooperate* as well as by express refusal." (Citations omitted; emphasis added.) Id.