[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, James Kieley, appeals the December 2, 1998 decision of the defendant, Commissioner of the Department of Motor Vehicles ("DMV"), which suspended the plaintiffs motor vehicle operator's license for a period of six months. The DMV acted pursuant to General Statutes § 14-227b on the basis that the plaintiff had refused a chemical test of the alcohol content of his blood after having been arrested on a charge of operating a motor vehicle while under the influence of alcohol. The aggrieved plaintiff brings this appeal pursuant to General Statutes § 4-183.
The evidence presented at the hearing before the DMV hearing officer consisted of the A-44 form[1] with attached report, the plaintiffs testimony which centered on his medical condition, and a number of medical and pharmacy prescription records concerning the plaintiffs heart condition.
The A-44 and attached supplemental report and documents established that on Saturday, November 7, 1998, at approximately 10:14 p. m., Officers William Flynn and Cynthia Schneider, Southbury Police Department, were dispatched to 547 Community House Road for a reported suspicious person complaint. Upon arrival, Officer Flynn found the plaintiff, James Kieley, standing beside a black Nissan Altima, four door sedan, which was parked off the right shoulder of the road. The right front tire of the vehicle was flat, although no other damage to the vehicle was observed. The plaintiff told the officer that he had had dinner at his brother's home in Oxford and was driving back to his home in Woodbury when he hit something on the right shoulder of the road which caused the right front tire to go flat. The plaintiff told the officer that he had pulled off the road and approached one of the homes in the area to seek assistance.
Officer Flynn noted that the plaintiff appeared dazed, had slurred speech, glassy eyes and leaned on his vehicle for support. Officer Flynn could smell the odor of liquor on the plaintiffs breath and the plaintiff stated that he had had two glasses of wine at his brother's home with dinner. Flynn asked CT Page 12170 the plaintiff to perform the standardized field sobriety tests. The plaintiff agreed and stated that he had no physical disabilities which would prevent him from performing any physical test. Thereafter, the horizontal gaze nystagmus test, walk-and-turn, and one leg stand were explained to the plaintiff prior to his performing each. The plaintiff performed poorly on each test. During the one leg stand, the plaintiff used his arms for balance, put his foot down three times, and complained of pain in his groin, although the plaintiff refused any medical assistance.
Officer Flynn placed the plaintiff under arrest for driving while intoxicated based on the plaintiffs admitted operation of the vehicle, the odor of alcohol emanating from the plaintiffs breath, his poor performance on the field sobriety tests, his statement that he had two glasses of wine (later changed to no more than three glasses of wine), and his intoxicated appearance which included slurred speech, glassy eyes and dazed appearance.
At the Southbury police department, the plaintiff stated that he wished to speak to an attorney before consenting to the breath test. The plaintiff was allowed to speak to an attorney subsequent to which he stated he would consent to the breath test. The intoxilyzer was prepared and tested and the plaintiff instructed as to how to proceed. The plaintiff placed his lips on the breath inlet and began to blow, at which point the machine gave a brief reading of .103. Once the reading appeared on the display screen, the plaintiff stopped blowing into the machine, loosened his seal on the breath inlet, and allowed his breath to blow onto Officer Flynn's hand and not into the machine. At that point, the plaintiff was re-instructed on what he needed to do in order to provide a sample and advised that if he did not provide a valid sample it would be considered a refusal. The plaintiff again attempted to give a sample, puffing out his cheeks and making facial expressions as if he was blowing hard. However, no air was entering the machine. When the plaintiff removed his mouth from the breath inlet, he exhaled heavily onto Officer Flynn's hand again. The intoxilyzer showed no breath having registered. The machine stopped and an insufficient sample was registered.
The plaintiff stated that he had a heart condition and that he couldn't get sufficient air into the machine. Officer Flynn told the plaintiff that he would take the plaintiff to the state police barracks at Troop A where the plaintiff could attempt the CT Page 12171 test again if the plaintiff believed that there may be a problem with the intoxilyzer at the Southbury Police Department. The plaintiff agreed to take the test again at Troop A. At Troop A, the intoxilyzer was prepared and the plaintiff again instructed on how to give a valid sample and that failure to give a valid sample would be considered a refusal. The plaintiff placed his lips on the breath inlet and again puffed out his cheeks and made facial expressions as if he were blowing hard but no air was traveling down the tube. When the plaintiff removed his mouth from the breath inlet, he again exhaled strongly onto Officer Flynn's hand. Again, the intoxilyzer stopped the testing sequence and an insufficient sample registered. No further testing was attempted and the plaintiffs actions were treated as a refusal by Officers Flynn and Schneider.
On December 1, 1998, an administrative hearing on the DMV suspension of the plaintiffs motor vehicle operator's license was held before Attorney Jeffrey Donohue, the hearing officer for DMV. After receiving and listening to all the evidence, including the plaintiffs testimony and evidence, the hearing officer issued a decision upholding the plaintiffs suspension for a period of six months. This administrative appeal to this court followed.
The plaintiff originally raised two issues in his administrative appeal. The first was that there was not substantial evidence in the record in which to find operation by the plaintiff because Box H on the A-44 form was not checked making the supplemental report of the officers inadmissible. The plaintiff abandoned this issue at the hearing before this court based on Bialowas v. Commissioner of Motor Vehicles,44 Conn. App. 702, 713 (1997). Clearly, the facts contained within the reports which were properly admitted at the DMV hearing, lead to a reasonable inference of operation. In addition, the plaintiff admitted operation. Thus, although this issue was abandoned by the plaintiff in the hearing before this court, it is clear that the hearing officer's finding of operation was correct and supported by substantial evidence in the record.
The second issue raised in this administrative appeal concerns the plaintiffs alleged refusal of the chemical test. The plaintiff claims that there are not sufficient facts in the report to justify the hearing officer's conclusion that the plaintiff refused to take a breath test. (Plaintiffs Brief, p. 6.) CT Page 12172
Under General Statutes § 14-227b(g). the hearing conducted before the hearing officer was limited to a determination of the following four issues: (1) did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. In this type of an administrative appeal, the plaintiff bears the burden of proving that the DMV decision to suspend his motor vehicle's operator's license was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Schallenkamp v. DelPonte, 229 Conn. 31, 39 (1994); see also Lawrence v. Kozlowski, 171 Conn. 705, 713-14 (1976), cert denied, 431 U.S. 969 (1977).
It is noteworthy that the plaintiff does not claim that General Statutes § 14-227b does not apply to him because of §14-227b(1), which provides: "The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable." Rather, as elucidated at oral argument in the present appeal and in the plaintiffs brief (see pp. 6-7), the plaintiffs argument is that there are not sufficient facts in the report to justify the hearing officer's conclusion that the plaintiff intentionally refused to take a breath test.
"`[R]efusing' to take a breath test may be accomplished by a failure to cooperate as well as by an expressed refusal." Statev. Corbeil, 41 Conn. App. 7, 19, cert granted on other grounds and appeal dismissed, 237 Conn. 919 (1996). In Bialowas v.Commissioner of Motor Vehicles, the Appellate Court ruled: "We hold that where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not automatically constitute refusal within the meaning of § 14-227b. Such refusal must be supported by substantial evidence." Bialowas v. Commissioner of MotorVehicles, supra, 44 Conn. App. 714-15.
In the present case, the hearing officer's conclusion that the plaintiff refused to take a breath test is supported by the facts and observations of the police officers contained in the record, as in Ellam v. Commissioner of Motor Vehicles,47 Conn. App. 509, 514-16 (1998). In the present case, the machine was CT Page 12173 checked and operating properly. The plaintiff initially was blowing sufficient breath for the machine to give a brief reading of .103. However, once this reading appeared on the display, the plaintiff stopped blowing into the machine. The plaintiff loosened his seal on the breath inlet allowing his breath to blow onto the officer's hand and not into the intoxilyzer. The plaintiff was then re-instructed on what needed to be done in order to give a valid sample and advised if he did not provide a valid sample it would be considered a refusal. The plaintiff again attempted to give a sample, puffing out his cheeks and making facial expressions as if he were blowing hard. However, no air was entering into the intoxilyzer. Again, when the plaintiff removed his mouth from the breath inlet, he exhaled heavily onto the officer's hand. The intoxilyzer showed no breath being registered. The intoxilyzer then stopped the test and an insufficient sample registered. These events were witnessed by the two police officers.
The plaintiff did mention that he had a heart condition and that he couldn't get air into the machine. The plaintiff was told that he could attempt the test at Troop A of the state police barracks. The plaintiff then agreed to take the test again at Troop A. After the machine was checked and after being instructed on how the intoxilyzer worked, how to give a valid sample and that failure to provide a valid sample would be considered a refusal, the plaintiff began the test. Again, the plaintiff placed his lips on the breath inlet, puffed out his cheeks and made facial expressions as if he was blowing hard but no air was traveling down the tube. When the plaintiff took his mouth off the inlet, he again exhaled strongly and directly onto the hand of the police officer. Again, the intoxilyzer stopped the testing sequence and an insufficient sample was registered.
Thus, there is substantial evidence in the record from which the hearing officer could have concluded that the plaintiff refused to submit to the test.
Of course, there was contradictory testimony presented by the plaintiff, in addition to evidence of his heart condition and medication. However, the mere possibility of drawing two different conclusions from the evidence does not prevent an agency's determination from being supported by substantial evidence. Newtown v. Keeney, 234 Conn. 312, 320 (1995), quotingSamperi v. Inland Wetlands Agency, 226 Conn. 579, 587-88 (1993). Here, the DMV hearing officer was under no obligation to accept CT Page 12174 the plaintiffs explanation of events. Again, the hearing officer's finding of refusal to submit to a test or analysis was fully supported by substantial evidence in the record.
Based on the foregoing, the DMV decision to suspend the plaintiffs Connecticut operator's license for six months will not be disturbed. The plaintiff's administrative appeal from that decision is, therefore, dismissed.
Michael Hartmere, Judge