WILSON, Judge.
This is an appeal by the plaintiff Charles O’Brien from a final decision of the Office of the Director of Regulation, the Director of Regulation (“Director”) revoking the plaintiffs gaming license. The plaintiff claims aggrievement in that he “was terminated due to arrest that has since been nolled.” (Appeal p. 2) The appeal is taken pursuant to Mohegan Tribal Ordinance (MTO) 95-6.
I. JURISDICTION
MTO 95-6 contains several provisions relevant to this appeal. Sec. 1(a) provides that the “Agency” includes the Office of the Director of Regulation as set forth in MTO 95-2; (b) provides that the “final decision” includes a final decision of the Director regarding revocation of gaming licenses. Sec. 2(a) provides that “a person who is aggrieved by the final decision may appeal to the Gaming Disputes Court as provided in this ordinance.” MTO 95-2, Sec. 13, likewise provides for an appeal to this court from final decisions of the Director regarding revocation of gaming licenses. The court therefore finds that it has jurisdiction to hear this appeal.
*394 II. FACTUAL BACKGROUND
The plaintiff was employed as a coin cashier by the Mohegan Sun Casino, a gaming operation operating under the Mohegan Tribal Gaming Authority established by the Mohegan Tribal Council pursuant to the Mohegan Constitution. MTO 95-2. See also MTO 94-1. His position required that he have a gaming license.
On or about May 10, 1999 the plaintiff was arrested and charged with trespass. He was in possession of his cellular phone at the time. On or about August 21, 1999 the plaintiff was arrested on a warrant on charges of harassment and threatening. These charges related to about six phone calls made to one Richard Bennett on the aforesaid May 10th date, which calls were traced to the plaintiffs cell phone. Mr. Bennett is the father of the plaintiffs former girlfriend. The calls were said to be of a harassing and/or threatening nature. These charges were subsequently nolled and will be discussed later.
The Director’s office learned of the latter arrest (probably from a newspaper article) and learned that the subject of the arrest was the plaintiff who was then employed as a coin cashier. An investigator was assigned to investigate the matter, including an interview of the plaintiff. The plaintiff failed to appear for one scheduled interview and appeared late for a rescheduled interview, too late for the interview to proceed. (Further facts relating to this will be discussed below.) Based on the arrest, the failure to appear for one interview, and the belated appearance for the second scheduled interview, the Director issued an order on September 9, 1999 barring the plaintiff from the Mohegan Sun Casino and the Mohegan Tribal Reservation thereby, in effect, revoking his license.[1]
The order of September 9th informed the plaintiff of his right to appeal to the Director and the plaintiff did so. An appeal hearing was held on October 6, 1999 at which time the plaintiff was heard. He denied the charges and offered his explanation of the situation. On October 7, 1999 the Director upheld the action and an appeal to this court followed.
III. LEGAL STANDARD OF REVIEW
An appeal to this court from a revocation of a license is governed, inter alia, by MTO 95-6. In accordance with Sec. 2(g) a transcript of the hearing held by the Director was made a part of the record of this case, as were other documents in the record, including the agency’s findings of fact and conclusions of law. Pursuant to subsection (k) additional evidence was taken by the court. Oral arguments and written briefs were received.
Under subsection (i) the appeal is confined to the record as thus established. Under subsection (j):
(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person ap *395 pealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment.
The standard set forth in Sec. 2(j) of MTO 95-6 is substantially the same as that set forth in the Connecticut Administrative Procedures Act, CONN.GEN. STAT. Sec. 4-183(j); therefore, Connecticut cases interpreting Sec. 4-183 are instructive. Under this standard, in an administrative appeal from the revocation of a license, the plaintiff bears the burden of proving that the director’s decision to revoke a license was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, cf. Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. 702, 708-709, 692 A.2d 834 (1997):
Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency’s findings of basic fact and whether the conclusions drawn from those facts are reasonable ... Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding ... the decision must be upheld. Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. at 709, 692 A.2d 834 (internal quotation marks and citations omitted).
Also applicable is MTO 95-2, An Ordinance Establishing the Mohegan Tribal Gaming Authority (MTGA), which grants the MTGA the power over licensing and vests in the Director the duty of “issuing and revoking licenses and generally overseeing the integrity of the gaming operation.” Sec. 5(b)(10). Sec. 12(5) provides that the Director “shall carry out the Tribe’s regulatory duties as described in MTO 94-1 and vests in the Director final authority over all license applications.”
MTO 94-1, the “Mohegan Tribal Gaming Ordinance”, incorporates the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. Secs. 2701 et seq., and sets forth in Sec. 9 qualifications for gaming licenses. One of the purposes is to protect against “threats to the public interest, or the interest of the Tribe or to the effective regulation and control of gaming.” See 25 U.S.C. Sec. 2710(b)(2)(F)(ii)(II).
IV. REVIEW OF THE DEFENDANT’S ORDER
The defendant’s order was based on three elements: (1) the plaintiffs honesty with respect to the phone calls; (2) his non-appearance at one scheduled interview and his tardiness at the next one; (3) and his lack of cooperation with the police in the investigation of the phone calls.
*396 A.PHONE CALLS
It apparently is unquestioned that late in the evening of May 10th about six phone calls, perceived to be of a harassing or threatening nature, were made to Mr. Bennett, father of the plaintiffs former girlfriend. The police traced the calls to the plaintiffs cell phone. The plaintiff had been arrested for trespassing later in the evening on that date and had the cell phone in his possession. The plaintiff steadfastly denied making the calls. He said that he had left the phone at a friend’s house the night in question to recharge, and that at the time the calls were made the phone was at his friend’s house while he was not. He said that he had picked up the phone after the calls were placed. He also testified that he had no reason to call Mr. Bennett, the father of his former girlfriend, and that he had not spoken to his former girlfriend since about 1994 or 1995.
The charges against the plaintiff were nolled. The defendant points out that the high standard of proof in a criminal case, beyond a reasonable doubt, was likely the reason for the nolle. Even so, based on the record in this case, this court cannot find that it was even more probable than not that the plaintiff made the calls. The record herein discloses only that the calls were traced to the plaintiffs phone at a certain time or times. The plaintiff denies that he had the phone at that time and denies making the calls. There is no other evidence in this record that connects the plaintiff with the calls. The plaintiff also refuted the defendant’s findings that the calls were made to “his girlfriend’s residence” on the basis that the calls were made to his former girlfriend’s father and that he had a different girlfriend at the time.
The court therefore does not find support in the record for the finding that the plaintiff made any phone calls to his girlfriend’s house. As the appellate court said in Bialowas v. Commissioner of Motor Vehicles, supra, “the obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it.” 44 Conn.App. at 709, 692 A.2d 834.
B. THE FAILURE TO APPEAR FOR INTERVIEWS
The plaintiff offered an explanation for his non-attendance and tardiness at the intei-views scheduled with the defendant’s office. The September 7th interview was scheduled for 9:30 A.M. The plaintiff did not appear and later telephoned saying he had overslept and asked that it be rescheduled for later that morning. The office agreed to reschedule for the next morning, September 8th at 10:00 A.M. The plaintiff did not appear on time. The office of the defendant indicated that he was forty minutes late while the plaintiff said he was only two minutes late. Because investigator had other things scheduled, the interview was denied. The plaintiff said he got stuck at a stop sign and arrived at 10:02 and was then told his appointment was at 9:30. The plaintiff had previously been told it was at 10:00 and that he was only two minutes late. At the hearing the Director indicated that “there could have been some confusion.” (TR. p. 6)
The court finds that there was some confusion. Those incidents were minor in nature and do not pose a threat to the interest or integrity of the Tribe or the effective regulation of gaming, and do not afford legal grounds for the revocation of a license.
C. LACK OF COOPERATION WITH THE POLICE
Whereas the plaintiff denied making the phone calls in question, he readily admitted that he knew the nature of the calls *397 and who made the calls, and that he refused to provide information to the police about the calls, as the following excerpts from the hearing held by the defendant illustrate: FMM = Francis M. Mullen, the Director; CO’B = Charles O’Brien, the plaintiff; EFP = Edward F. Picket, Assistant Director.
FMM: What were the nature of the calls, do you know?
CO’B: Um, yeah actually I do, they were calls to the point where it was said that they called this house up and said put your daughter on the phone cause they wanted to talk to his daughter' and he wouldn’t put her on the phone cause it was like 11:00 but they wanted to talk to her, I talked to them about this later1 on and then he started giving an attitude about that which I understand but he threatened them and then they just threatened him right back such as I know where you live, don’t think Pm afraid to come down there.
FMM: Those were the nature of the calls made to the gentleman?
CO’B: Yup.
FMM: The girl’s father?
CO’B: The girl’s father.
FMM: Do you know who made the calls?
CO’B: Yes.
FMM: Do the police now know?
CO’B: No
[[Image here]]
EFP: You know who did make the phone calls?
CO’B: Yes.
EFP: Have you told the police who was responsible?
CO’B: No.
EFP: Have they asked you?
CO’B: Yes.
EFP: And you’ve denied help to the police?
FMM: Why?
CO’B: Yes. It’s a friendship thing. And my friend would go to jail for 6 years on these 2 charges as in violation of probation, whereas this is my first offense and the charges aren’t even gonna get, like, nobody seems to think that these charges are going anywhere.
MPB: So you’re taking the hit for your friend is what your doing?
CO’B: Yes.
EFP: You’re associating then with somebody
CO’B: No, I don’t associate with him anymore cause of all this but I’m still not gonna let him go away cause he was my best friend for like 3 or 4 or 5 years, something like that.
EFP: Okay, so you’re saying to me that a former friend had had involvement with the law enforcement to the point where he was on probation and would have gone away for 6 years?
CO’B: Around there.
EFP: Okay. So therefore, based upon that you will not cooperate with the police too?
Have the person responsible for making the threatening calls to some father at 11:00 at night?
CO’B: Yes, right.
EFP: No, I have nothing else
[[Image here]]
FMM: So you have knowledge of a crime committed and you are declining to cooperate with police. You are saying that?
CO’B: Yes.
Based on the standard of review set forth above, there clearly is substantial evidence in the record to support the finding that the plaintiff failed to cooperate *398 with the police. He knew the nature of the calls and who made them but refused to tell this to the police. This court cannot substitute its judgment for that of the defendant as to the weight of the evidence on questions of fact. MTO 95-6, Sec. 2(j).
Nor is this court permitted to substitute its discretion for that of the defendant. The Director might well have concluded that a lack of cooperation with the police in a serious matter would be indicative of a similar lack of cooperation in some future investigation into alleged irregularities at the casino. The defendant has concluded that exclusion from the reservation was warranted to preserve the integrity of the gaming enterprise. This was within the discretion of the defendant who has the duty of issuing and revoking licenses and overseeing the integrity of the gaming operation. He has final authority over all license applications. Based on the record this court cannot hold that this was an abuse of discretion or a clearly unwarranted exercise of discretion.
Department of Public Safety v. Freedom of Information Commission, 51 Conn.App. 100, 104, 720 A.2d 268 (1998).
Therefore, the appeal is dismissed without costs.

. The defendant’s orders did not expressly refer to a revocation of a license. They referred to an order, or action, "barring” the plaintiff from the casino and the reservation. The plaintiff’s appeal and petition from the order was “regarding revocation of a gaming license” pursuant to MTO 95-6. The defendant’s response was in compliance with MTO 95-6, the ordinance concerning appeals from “revocation of gaming licenses.” The ordinances do not address orders "barring” persons from the reservation; they do, as will be noted, contain several provisions regarding revocation of licenses. Because the parties have treated this as an appeal from a revocation of a license and, given the posture of this case, the court will likewise treat it as such an appeal.