## THOMAS LOMEN *v.* COMMISSIONER OF MOTOR VEHICLES
### (AC 19047)

Zarella, Pellegrino and O'Connell, Js.

Argued September 21—officially released December 26, 2000

*Jeffrey D. Brownstein,* with whom, on the brief, was *Gregory A. Thompson,* for the appellant (plaintiff).

*Robert L. Marconi,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

O'CONNELL, J. The plaintiff appeals from the judgment of the trial court dismissing his appeal from the

decision of the defendant commissioner of motor vehicles (commissioner) suspending his license to operate a motor vehicle pursuant to General Statutes § 14-227b (c).[1] The plaintiff claims that the court improperly concluded that (1) the hearing officer correctly admitted a state's exhibit into evidence and (2) there was substantial evidence of the plaintiff's refusal to take a breath test. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for our disposition of this appeal. On May 7, 1998, the plaintiff was at the Meriden police station as a result of having been arrested on a charge of operating a

[1] General Statutes § 14-227b (c) provides: "If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period and shall issue a temporary operator's license or nonresident operating privilege to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight."

motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a.[2] The plaintiff agreed to take a breath test to determine his blood alcohol content. See General Statutes § 14-227b (c). Officer John Williams, a certified testing officer, administered the test with the arresting officer, Officer Michael Hadvab, acting as a witness. Williams instructed the plaintiff on how to perform the test but, contrary to Williams' instructions, the plaintiff would blow into the tube of the intoxilyzer only for a second, stop, then blow again. Williams, while holding the tube for the plaintiff, noticed that he was blowing more air into Williams' hand than into the tube. Despite repeated instructions, the plaintiff continued in his failure to comply with Williams' instructions. He then complained that he wanted to go to the bathroom and stated that he did not want to take the test anymore.[3] At that point, he refused to blow into the intoxilyzer again. Hadvab witnessed that refusal.

The police reported the plaintiff's arrest and refusal to participate in the test to the commissioner, who initiated the suspension action against the plaintiff. The plaintiff then requested an administrative hearing before the commissioner. The commissioner, acting through Charles G. Greenwald, his hearing officer, found, inter alia, that "the operator refused to submit to [a] test or analysis." Over the plaintiff's objection, the hearing officer admitted state's exhibit A into evidence. That exhibit consisted of a form A-44[4] together with a

---

[2] General Statutes § 14-227a provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug . . . ."

[3] Because the appeal was argued on the basis of a refusal by conduct, we will limit our analysis to that aspect of General Statutes § 14-227b (c). We note, however, that the plaintiff appears to have verbally refused to take the test. We also note that the plaintiff's refusal to complete the first test could constitute a refusal to take the second test required by § 14-227b (k).

[4] Form A-44 is the report of the refusal to take the test. The form is required by General Statutes § 14-227b (c). See footnote 1.

supplemental report from Hadvab and an affidavit by Williams. As a consequence of the hearing officer's findings and conclusions, the commissioner suspended the plaintiff's motor vehicle operator's license for six months.

## I

The plaintiff first complains that the hearing officer should not have admitted the A-44 and its attachments into evidence. The plaintiff's principal claim, as argued in his brief, is that the A-44 and attachments should not have been admitted because only Hadvab, the arresting officer, and Williams, the testing officer, signed the A-44. In his brief, the plaintiff argues that the statute requires that a third person be present to witness his refusal and, in the absence of a third person's signature, the hearing officer could not properly admit the exhibit into evidence.

Any merit that this argument may have had was emasculated by this court's decision in *Mailhot* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 62, 733 A.2d 304 (1999).[5] *Mailhot* unequivocally put to rest any claim that more than two officers must be present in a refusal situation for an A-44 to be admitted into evidence. The *Mailhot* court enunciated: "We hold that § 14-227b (c), where there is a refusal to take the test by the party arrested, requires, at a minimum, the presence of three persons, i.e., the person charged, the arresting officer and a third party witness, who may or may not be the same person who took the arresting officer's oath.

"Accordingly, we conclude that the trial court, in concluding that the hearing officer properly admitted into evidence the A-44 report and that the hearing offi-

[5] We are not critical of the plaintiff's counsel for making a "third person" argument in his brief. The brief was filed by the plaintiff on June 3, 1999, and the *Mailhot* decision was not decided until twenty-six days later on June 29, 1999. We do not expect prescience on the part of counsel.

cer properly suspended the plaintiff's driver's license, acted reasonably and prudently in accordance with applicable law." Id., 66.

Applying *Mailhot* to the present case, we find that three people were present during the testing—the plaintiff, arresting officer Hadvab and testing officer Williams. Hadvab swore to the A-44 in his capacity as arresting officer, and the plaintiff's refusal was witnessed by him and testing officer Williams, both of whom signed the A-44.

At oral argument, the plaintiff attempted to distinguish *Mailhot* by arguing that Hadvab could not sign the A-44 as both the arresting officer and as a witness to the refusal to take the test, even though Williams signed the A-44 as the testing officer. The plaintiff claims that this means the A-44 is not properly executed. We are not persuaded.

The court properly affirmed the hearing officer's admission of state's exhibit A into evidence.

## II

The plaintiff next claims that even if state's exhibit A was admissible, there was not substantial evidence of a refusal to take the test. Even though the plaintiff agreed to take a breath test, the state argues that his conduct amounted to a refusal.[6] Refusal to take a breath test can be by conduct as well as express verbal refusal. *Tompkins* v. *Commissioner of Motor Vehicles*, 60 Conn. App. 830, 832, 761 A.2d 786 (2000).

In *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 714–15, 692 A.2d 834 (1997), this court held that "where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not

---

[6] See footnote 3.

automatically constitute refusal within the meaning of § 14-227b. Such refusal must be supported by substantial evidence." The gravamen of *Bialowas* is that, without more, an officer's conclusory statement that the operator has refused the test does not constitute substantial evidence. In *Bialowas*, the officer failed to furnish supporting evidence for his conclusion that the plaintiff therein had refused to take the test. Id., 716–17; cf. *Tompkins* v. *Commissioner of Motor Vehicles*, supra, 60 Conn. App. 833 (officer provided supporting details).

As previously stated, the plaintiff in this case failed to comply with the officer's repeated instructions as to how the test should be performed. The plaintiff improperly blew into the intoxilyzer and subsequently refused to blow into the intoxilyzer again.

Thus, we conclude in this case that the officer furnished supporting details "as contrasted with the naked conclusion of the police officer in *Bialowas* . . . . Factual determinations of the commissioner must be upheld if there is substantial evidence in the record to support such a finding. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Such a standard of review allows less room for judicial scrutiny than does the weight of the evidence rule or the clearly erroneous rule. . . . In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citation omitted; internal quotation marks omitted.) *Tompkins* v. *Commissioner of Motor Vehicles*, supra, 60 Conn. App. 833–34.

"Whether the plaintiff's actions constituted a refusal to submit to the test presented a question of fact, and, therefore, the trial court's review was limited to

determining whether the hearing officer's finding was supported by substantial evidence." Id., 834.

Pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., the court may not substitute its judgment for that of the commissioner and must affirm his decision unless it is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. General Statutes § 4-183 (j). In the present case, the court properly determined that there was substantial evidence to support the commissioner's findings.

The judgment is affirmed.

In this opinion the other judges concurred.