WILSON, Judge.
This is an appeal by the plaintiff, Guy P. MacLean, from a final decision of the Office of the Director of Regulation, the Director of Regulation, barring the plaintiff from the Mohegan Sun. The plaintiff has appealed pursuant to Mohegan Tribal Ordinance (MTO) 95-6.[1]
1. JURISDICTION
MTO 2002-13 contains several provisions relevant to this appeal. Sec. 1(a) provides that the Agency includes the Office of the Director of Regulation as set forth in MTO 95-2; and (b) provides that the final decision means any final agency action. Sec. 3(a) provides that “a person who is aggrieved by the final decision may appeal to the Gaming Disputes Court as provided in this ordinance.”[2] MTO 95-2, Sec. 13, likewise provides for an appeal to this court from the final decisions of the director regarding revocation of gaming licenses. The court therefore finds that it has jurisdiction to hear this appeal.
II. FACTUAL liACKUROUM)
The plaintiff was hired as a dealer by the Mohegan Sun Casino, a gaming operation operated under the Mohegan Tribal Gaming Authority established by the Mohegan Tribal Council pursuant to the Mohegan Constitution. MTO 95-2 and MTO 94-1. The requirements of the Tribal State Compact Between the Mohegan Tribe and the State of Connecticut (“Compact”), Sec. 5(a), required that the plaintiff hold a valid, current gaming employee license. The plaintiff did commence work as a dealer pursuant to such license.
The order issued by the defendant was to bar the plaintiff from the Mohegan Sun. This order was issued pursuant to Sec. 7(b)(ii) of the Compact which reads in Ml as follows:
*518 (ii) The Tribal gaming agency shall establish a list of persons barred from the gaming facilities because their criminal history or association with career offenders or career offender organizations poses a threat to the integrity. of the gaming activities of the Tribe. The Tribe shall employ its best efforts to exclude persons on such list from entry into its gaming facilities. The Tribe shall also exclude persons engaging in disorderly conduct or other conduct jeopardizing public safety in the gaming facility.
In relevant part the decision read as follows:
Based upon the authority of the Mohegan Tribal Gaming Commission and pursuant to Sec. 7(b)(ii) of the Mohegan Tribe/State of Connecticut Gaming Compact, you are hereby barred from the Mohegan Sun Casino and all attendant gaming facilities which includes all parking areas, parking garages, gas station, employee center and arena, This action is based upon your conduct on May 30, 2002 in which you instructed a patron on how to circumvent the filing of a cash transaction report on his winnings while playing at your table. The Gaming Commission finds that your presence here poses a threat to the integrity of the gaming activities of the Tribe.
The sole evidence in the record[3] in support of this finding is an unsworn, uncorroborated written statement of Mr. Corey M. Randolph, poker shift manager, whose statement reads in full as follows:
On 30 May 02, I was observing Caribbean Draw table # 2. Patron Michael Vietello 2488985 was winning approximately $8,000. I heard dealer Guy Mac-lean explain to patron how to avoid CTR. He told patron “Have her cash some in for you” “or take it to different windows.” I immediately had the dealer tapped off of the table and brought him to the office with asst shift Mgr Tony Beletsky. I had the dealer read the policy and issued a Notice, of Unsatisfactory Performance/Misconduct. The dealer refused to sign. I explained to him that this violation must be reviewed by the Poker Director (Peter Lau). I suspended him pending investigation. While in the office patron Michael Viet-ello picked up chips and walked out. The floorperson gave me his rating card, patron chips out wras $13,800. I took patrons card to poker cage and had a CTR filled out. Copies attached.
The policy referred to is policy # 61 on Currency Transaction Reporting dated March 1, 1996. The Policy and the Procedures read as follows:
POLICY:
1. All employees designated to attend Currency Transaction Reporting Training (Games, Slots, Finance, Marketing) shall attend a CTR training program and sign a form indicating that they have received, read and been informed of the industry guidelines, CTR regulations and internal procedures regarding Currency Transaction Reporting (Exhibit A). This form will become a part of each employee’s personnel file.
2. Any employee who does not follow these industry guidelines or who violates CTR regulations and internal procedures shall be subject to disciplinary action. Disciplinary action to be taken in each case shall be pre-approved by a quorum of the CTR Compliance Committee.
3. Employees who willingly counsel customers-or conspire with a customer to enable the customer to avoid the fil *519 ing of a Currency Transaction Report; who intentionally fail to complete a CTR when they have knowledge of a reportable transaction; or intentionally violate CTR regulations, industry guidelines, and internal procedures shall be immediately terminated, and may be subject to federal prosecution.
PROCEDURES—(In the following progression):
a. Record of Discussion—A notation in the employee’s work history, signed by the employee. Normally issued for a minor infraction.
b. Final Written—Normally issued for a second or more serious infraction than those for wrhich a verbal counseling are used.
c. A subsequent infraction may result in termination. However, serious infractions may result in immediate termination without any prior disciplinary .action being taken.
The plaintiff appealed the decision through the channels of the Mohegan Sun. He testified at the hearings, and also submitted written evidence, that at no time did he attempt to counsel a patron on any chip cashing procedures. He denied any wrongdoing and offered several alternative (or hypothetical) explanations for what he termed was a “misunderstanding.” (Some of these will be considered in the subsequent discussion on substantial evidence.)
Mr. Randolph did not testify at the hearing held by the Director, and no corroboration of his written, unsworn statement was offered. At the hearing the plaintiff testified that he had not seen Mr. Randolph’s written statement until the hearing.
After the hearing the Director entered the decision barring the plaintiff from the casino, thereby effectively terminating his employment. There was no express decision as to the plaintiff’s gaming license. This appeal followed.
III. LEGAL STANDARD OF REVIEW
An appeal to this court from a “bar” from the casino, or a revocation of a license is governed, inter alia, by MTQ 2002-13. In accordance with Sec. 3(g) a transcript of the hearing held by the director was made a part of the record of this case, as were other documents in the record, including the agency’s findings of fact and conclusions of law. Oral arguments and written briefs were received.
Under subsection (i) the appeal is confined to the record as thus established. Under subsection (j):
(j) The court shall not constitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment : under subsection (k) of this section or remand the case for further proceedings. For purposes of this section a remand is a final judgment.
*520 The standard set forth in See. 3(j) of MTO 2000-13 is substantially the same as that set forth in the Connecticut Administrative Procedures Act, CONN. GEN.STAT. Sec. 4-1830); therefore, Connecticut cases interpreting Sec. 4-183 are instructive. Under this standard, in an administrative appeal, the plaintiff bears the burden of proving that the director’s decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, cf. Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. 702, 708-709, 692 A.2d 834 (1997).
Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency’s findings of basic fact and whether the conclusions drawn from those facts are reasonable.... Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding ... the decision must be upheld. The obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it. Bialowas v. Commissioner of Motor Vehicles, 44 Conn. App. at 709, 692 A.2d 834 (internal quotation marks and citations omitted). See also, Macdermid Inc. v. Dept. of Environmental Protection, 257 Conn. 128, 778 A.2d 7 (2001); and Rocque v. Freedom of Information Commission, 255 Conn. 651, 774 A.2d 957 (2001).
Several Mohegan ordinances are applicable in this case. MTO 95-2, An Ordinance Establishing the Mohegan Tribal Gaming Authority (MTGA), grants the MTGA the power over licensing and vests in the director the duty of “issuing and revoking licenses and generally overseeing the integrity of the gaming operation.” Sec. 5(b)(10). Sec. 12(5) provides that the director “shall carry out the tribe’s regulatory duties” as described in MTO 94-1, and vests in the Director “final authority over all license applications.”
MTO 94-1, the Mohegan Tribal Gaming Ordinance, incorporates the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. Secs. 2701 et seq., and sets forth in Sec. 9 qualifications for gaming licenses. One of the purposes is to protect against “threats to the public interest, or the interest of the Tribe or to the effective regulation and control of gaming.” See 25 U.S.C. Sec. 2710(b)(2)(F)(ii)(II).
These ordinances comply with the requirement Of Sec. 7(a) of the “Compact” to “adopt standards of operation and management to ... protect the public interest in the integrity of the gaming operations .” (emphasis added) Such a standard is likewise required by 25 U.S.C. Sec. 2710(b)(2)(F)(ii)(II).
IV. REVIEW OF THE DEFENDANT’S ORDER
A. The decision appealed from was to bar the plaintiff from the Mohegan Sun pursuant to the Compact Sec. 7(b)(ii). There is nothing in the record in this appeal to establish that the plaintiff has a “criminal history or association with career offenders or career offender organization [which] poses a threat to the integrity of the gaming activities of the tribe.” Nor is there any evidence that the plaintiff engaged in “disorderly conduct or other conduct jeopardizing public safety in the gam *521 ing facility. The order to bar, therefore, is clearly erroneous and prejudicial to the plaintiff. On that ground alone the appeal must be sustained.
B. Treating the action of the defendant as a revocation of the plaintiffs gaming license, the appeal must still be sustained. The only evidence in the record is the unsworn, uncorroborated hearsay statement of Mr. Randolph in which he stated what he said he heard the plaintiff say. The plaintiff denies saying this. He also pointed out that there were numerous reasons why there could have been a misunderstanding, including that there were quite a few people in the room, there were several loud voices, and that Mr. Randolph was probably some distance away. Mr. Randolph was never called as a witness nor were any others who might have heard any conversation. The plaintiff testified that he had not seen Mr. Randolph’s statement until the hearing held by the defendant.
Mr. Randolph’s statement is hearsay, i.e., an out-of-court statement offered in court to prove the truth of the matter asserted, i.e., that the plaintiff made the statement[4]. See, generally, Tail and La-Plante, Connecticut Evidence §§ 11.1.1 and 11. 1.2 (2d. Ed.1988). There is no recognized exception to the hearsay rule applicable here. There was no independent corroboration. The statement, being the only evidence relevant to the only issue material in the case, was central to the case. All of. the reasons for the exclusion of hearsay are applicable here: the statement was not under oath; there was no cross examination or opportunity for cross examination of the witness; [there were numerous avenues for possible cross examination, as noted above]; there was no opportunity to observe the witness. Tail and, LaPlante, op. cit.
For all of these reasons the court finds that the hearsay statement does not constitute substantial evidence sufficient to support the decision. It is the only evidence probative of the plaintiffs culpability and its use to support the decision was therefore prejudicial to the plaintiff, cf. Carlson v. Kozlowski, 172 Conn. 263, 267, 374 A.2d 207 (1977). The appeal must therefore be sustained.
Pursuant to MTO 2002-13, Sec. 3(j) and (k), the plaintiffs appeal is sustained and judgment may enter reversing the decision. The order to bar and exclude the plaintiff, as well as to revoke his license, is vacated and the defendant is directed to reinstate the plaintiff with back pay retroactive to the date of his termination; and, if applicable, to take such other action as may be necessary to reinstate the plaintiff with back pay.

. During the pendency of this appeal MTO 95-6 was repealed and replaced by MTO 2002-13. MTO 2002-13 is, by its terms, applicable to pending cases and henceforth will be referenced by its present number.

. The decision of the Director, whether considered a "bar” under the Compact or a revocation of license, is a final appealable decision.

, The appeal, as will be seen, is confined to the record.

. Whereas Mr. Randolph’s written statement: (“I heard dealer Guy MacLean explain to patron how to avoid CTR. He told patron ...”) is hearsay for the reasons stated, the statements attributed to the plaintiff, i.e., which the plaintiff is accused of saying, ("Have her cash some in for you” and "or take it to a different window,") are not hearsay; they are not offered to prove the truth of the matter asserted. Because they "are offered for the purpose of showing that such statements were made and not that what they declared was true, they do not come within the rule." Holden and Daly Connecticut Evidence, Sec. 93 (1966). That is, they are "declarations which come under the category of ‘verbal acts,' where what is said is relevant, not for the content of the declaration, but because such statements were made at all.” Id. at Sec 98. It is because they are included in Mr. Randolph's hearsay statement, and only in such statement, and because they are therefore disputed by the plaintiff, that they are inadmissible.