MEMORANDUM OF DECISION
WILSON, Judge.
The Plaintiff appeals from a decision of the Director of Regulation (O.D.R.) upholding an order of the Mohegan Tribal Gaming Commission (Commission) which, first, suspended the Plaintiffs gaming license; [1] and, secondly, “barred” the Plaintiff from the Mohegan Sun Casino, a gaming facility owned and operated by the Mohegan Tribe of Indians, a federally recognized tribe.
The Plaintiff, an employee of the Casino, was found to have illegally purchased prescription drugs from a fellow employee. After an investigation the Commission issued an order dated June 25, 2003, both suspending the Plaintiffs gaming license, and barring the Plaintiff from the Mohegan Sun Casino premises. The Plaintiff appealed this decision to the Defendant O.D.R who held a hearing, and thereafter issued a decision upholding both the suspension of the license and the bar from the Casino. The Plaintiff now appeals that decision to this court raising several issues, which will be considered in the order presented by the Plaintiff.
I.
The Defendant made a finding in its decision that “The Mohegan Sun Policies on personal conduct (#27) states the following is prohibited by all employees: ’12. Purchase, sale, possession or use of illegal drugs on or off duty or being under the influence of illegal drugs at any time on or off duty;’” (Para.15) and that “Mr. Pennella is in violation of this policy and should be considered unsuitable to retain his gaming license.” (Para.16).
The Plaintiff argues that because the quoted language is an employee standard of conduct, employment contract analysis can be employed to discern its meaning. The Plaintiff further argues that it was incumbent on the Defendant to prove that there was an express or implied contract of employment that the Plaintiff breached, and that failing such proof, the Defendant’s decision must fail. Citing, e.g., Torosyan v. Boehringer, 234 Conn. 1, 662 A.2d 89 (1995). The flaw in this argument is that this is not a breach of contract action. Rather, the Plaintiffs’ gaming license required by the State of Connecticut and The Mohegan Tribe “Tribal-State Compact,” pursuant to 25 U.S.C. §§ 2701 et seq., was suspended pursuant to the Compact. Such a license is a prerequisite to continued employment by the Tribe. See also MTO 94-1, the Mohegan Tribal Gaming Ordinance. Hence, contract analysis is not relevant to the issues on this appeal.
*289 II.
The Plaintiffs next claim is that there was no credible evidence to support the Commission’s finding that the Plaintiff purchased prescription drugs without a prescription. Under the standard of review applicable to this appeal, “The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.” MTO 2002-13, Sec. 3(j). The short answer to this claim is that the Plaintiffs own statement admits that he purchased prescription pills from a fellow employee. Commission Exhibit 3. The weight to be given to this evidence is solely for the Commission. It is sufficient to support the Commission’s finding.
III.
Next, the Plaintiff argues that Policy # 27 (12) does not apply to situations involving the illegal purchase of legal drags. To put this into context, the finding discloses that a Mohegan Sun security investigator suspected another Mohegan employee of providing prescription drugs to the Plaintiff on May 29, 2003. On that date, the Plaintiff was observed exchanging money with the other suspected employee and then transferred a white napkin between them. When questioned, the Plaintiff stated that he had borrowed money from the other employee and was paying it back. As to the white napkin, the Plaintiff stated that he had a cold at the time. The finding concludes that, although there was not a preponderance of the evidence to prove that the Plaintiff purchased drugs on May 29, 2003, he did purchase prescription drags from the other employee on two other occasions.
Exhibit 3 is a statement of the Plaintiff in which the Plaintiff admitted to purchasing prescription pills from a fellow employee on “only a couple of occasions and paid him a couple of bucks for them. It’s been a while since I bought and about a month (sic) since I took one or two. When I did get some from him I just asked him and got lucky that he had some. I am not a regular customer of Dave’s. I guess I was not very smart and don’t want to lose my job over a stupid move like this.” This is an admission of illegal conduct and knowledge of its illegality.
Further, at the hearing below, the Plaintiff admitted to purchasing controlled substances from the fellow employee.
This evidence is sufficient to sustain the findings of fact of the Defendant that the Plaintiff purchased prescription drugs/controlled substances from the fellow employee. The credibility of the witnesses and the weight to be given to the evidence is for the Commission to decide. MTO 2002-13, Sec. 3(j). Therefore, there is substantial evidence in the record to support the finding that the Plaintiff illegally possessed controlled substances of prescription drugs.
The conclusion that this finding warranted the suspension of the Plaintiffs license cannot be said to be arbitrary or capricious or characterized by the abuse of discretion. MTO 2002-13, Sec. 3<j)(6). The Commission could well conclude that such conduct constituted a “threat to the ... effective regulation of gaming.” MTO 94-1, Sec 9-1(c); IGRA 25 U.S.C. § 2710(b)(2)(F)(ii)(II).
The basic charge against the Plaintiff was that he “illegally purchased prescription drugs” from a fellow employee. Connecticut law (which pursuant to the Tribal-State Compact, the Tribe is committed to upholding; 25 IJ.S.C. §S 1775, 1775a and 1775b) prohibits the possession of even legal drugs (e,g., controlled substances) except as authorized by Chapter 420b of the Connecticut General Statutes, relating to *290 the prescribing of dependency producing drugs. C.G.S. Sec. 21a279.
In this context, the term “illegal drugs” in Policy # 27 can well be construed to include possession-of legal drugs illegally acquired. Further, apart from the policy manual, a violation of Connecticut law relating to illegal possession of controlled substances can be considered by the Defendant to be a threat to the effective regulation of gaming.
IV.
The Plaintiff asserts that MTO 94-1, the Mohegan Tribal Gaming Ordinance is unconstitutionally void for vagueness. Sec. 9-1 (c) of the Ordinance requires as a qualification for a gaming license that the applicant “has no prior activities, criminal record, reputation, habits and associations which pose a threat to the public interest or the interest of the Tribe or to the effective regulation and control of Gaming ...” The Plaintiff argues that the term “threat ... to the effective regulation and control of Gaming ...” is not defined or construed and is unconstitutionally vague. The Plaintiff relies heavily on a decision of the Connecticut Supreme Court in Packer v. Board of Education, 246 Conn. 89, 717 A.2d 117 (1998) construing the constitutionality of the Connecticut school expulsion statute. The Plaintiff argues that there is no law which makes the quoted ordinance the standard for suspending the license of the Plaintiff.
The conduct of gaming on Indian Reservations is heavily and tightly regulation by federal law. The Indian Gaming Regulatory Act of 1988 (IGRA) 25 U.S.C. §§ 2701-2721 is the governing statute and occupies the field of Indian gaming regulation. See generally Canby, American Indian Law Chapter X (2004). Both the Tribal State Compact and MTO 94-1 are required by, and patterned after, IGRA. The questioned language (“threat ... ”) of MTO 94-1 tracks precisely the language of, and is required by, IGRA, 25 U.S.C. § 2710(b)(2)(F)(ii)(II).
The Packer case, therefore, is not at all controlling or persuasive. The licensing of gaming employees is highly regulated by federal law, unlike the expulsion of students from Connecticut schools. Furthermore, a declaration that MTO 94-1 is unconstitutional would be tantamount to declaring an integral part of the IGRA to be unconstitutional.
It is highly questionable whether this court, a lower court of limited jurisdiction, has the power to declare a federal statute unconstitutional. “In fact, it has been stated that a court of first instance will assume a statute to be constitutional until otherwise determined by the higher courts.” 16 Am.Jur.2d Constitutional Law § 110. In any event, “courts should never declare a statute void, unless its invalidity is, in their judgment, beyond a reasonable doubt.” Id. § 109.
“It is a general principle of statutory law that a statute must be definite to be valid ... On the other hand, where the words assailed, taken in connection with the context, are commonly understood, their use does not render a statute invalid.” 16 Am.Jur.2d Constitutional Law, § 552. The words assailed here are commonly understood. A “threat” is a person or thing that might well cause harm. BLACK’S LAW DICTIONARY 1490 No. 3 (7th ed.1999). A “threat” may be construed as a “danger.” Shorter OXFORD ENGLISH DICTIONARY 2179 II. 1.
Y.
In light of the analysis of the Ordinance in IV above, the Plaintiffs final argument, that the Commission failed to pro *291 vide any proof that the Plaintiffs conduct created a threat to the effective regulation of gaming must also fail.
The Commission found that the Plaintiff had illegally purchased controlled drugs from a fellow employee. This was a violation of Connecticut law and of Mohegan Sun Policy. The Commission, exercising its regulatory role under IGRA, concluded that the Plaintiff might well cause harm or danger to the gaming operation. This court cannot substitute its judgment for that of the agency. The agency’s decision was lawful, not clearly erroneous, and not an abuse of discretion. The decision suspending the Plaintiffs license is affirmed.
VI.
The parties have focused on the license suspension and have not addressed that portion of the decision barring the Plaintiff from the Mohegan Sun Casino. There is a distinction, between the two orders. This court has previously noted the blurring of the distinction between the two types of orders issued by the Commission. See O’Brien v. ODR, 1 G.D.R. 50, 51, V.1 (2002); and Maclean v. ODR, 1 G.D.R. 110, 4 Am. Tribal Law 516, 2002 WL 34461861 (2003)
In barring the Plaintiff, the Commission relied on Section 7(b)(ii) of the Tribal State Compact pursuant to 25 U.S.C. § 2701 et seq., which requires the Tribe to establish a list of persons barred from the gaming facilities because their “criminal history or association with career offenders or career offender organizations poses a threat to the integrity of the gaming activities of the Tribe.” The record in this case contains no finding, nor was there any evidence which would support such a finding, that the Plaintiff has a “criminal history or association with career offenders or career offender organizations.” This differs from the qualification to be licensed in that the applicant must have “no prior activities, criminal record, reputation, habits and associations which pose a threat to the public interest or the inters of the Tribe or to the effective regulation and control of Gaming ...” MTO 94-1, Section 9-l(c). Certainly a person who is barred under the Compact is disqualified from licensure, but the converse is not necessarily true.
Conduct which disqualifies for licensure does not, ipso facto, constitute a grounds for bar under the Compact. Unless the employee has (taking into account the conduct which disqualifies for licensure) a “criminal history or association with career offender’s or career offender organizations [which] poses a threat to the integrity of the gaming activities of the Tribe,” there is no ‘ground for a bar. Because there was no finding in the Decision that the Plaintiff has a “criminal history or association” of the type described in the Compact, nor any evidence in the record that would support such a finding, the order barring the Plaintiff from the Mohegan Indian Reservation cannot stand. The appeal is sustained as to that portion of the decision barring the Plaintiff from the Reservation.
CONCLUSION
1.The finding of disorderly conduct is vacated.
2.The appeal from the decision of the Defendant barring the Plaintiff from the Mohegan Sun Casino is sustained.
3.The Decision of the Defendant upholding the suspension of the Plaintiffs Gaming license is affirmed.

. The June 25, 2003 decision suspended the Plaintiffs license pursuant to “Mohegan Tribal Ordmance 95-2, Section 5(10),” (sic). (The correct reference should be Section 5b(10).) Section 5(b)(10) incorporates Ordinance number 94-1, and it is that ordinance which sets forth the qualifications for gaming licenses. The decision provided that "your suitability (sic) to remain licensed is based upon your disorderly conduct in which you illegally purchased prescription drags from another employee of the casino.” There is no record evidence of "disorderly conduct”, which requires, inter alia, "intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof ...” C.G.S. Sec. 53a-182. As to such portion of the order as finds the Plaintiff engaged in "disorderly conduct,” such finding is vacated for lack of any evidence that the Plaintiff engaged in such conduct. MTO 2002-13, Sec. 3(j)(5).