MEMORANDUM OF DECISION

WILSON, Judge.
I.
The Plaintiff appeals from a decision of the Defendant ordering revocation of her gaming license and barring her from the Mohegan Reservation. The procedural history is as follows. In May 2003, the Plaintiff was employed as a craps dealer by the Mohegan Tribal Gaming Commission (MTGC). As such, she was required to be, and was, licensed by the MTGC. On May 8, 2003, the MTGC notified the Plaintiff that she was barred from the Mohegan Sun Casino and related facilities. The notice of that date from the MTGC to the Plaintiff (hereafter “notice”) informed the Plaintiff that “this action is based on your conduct on May 5, 2003 when you attempted to commit a larceny at the Nostalgia Store in the Casino’s Mall area. You also admitted to actual larcenies from this store in the past. The Gaming Commission finds that your presence here poses a threat to the integrity of the gaming activities of the tribe.” (This notice did not expressly revoke the Plaintiffs gaming license. It will be assumed, for purposes of this decision that the order- implicitly revoked the Plaintiffs license. There will be further discussion of this distinction between a bar from the reservation and a revocation of a license.) The notice went on to inform the Plaintiff of her right to “appeal this decision in writing” and that “you have the right to bring an attorney to represent you at this hearing.” (Ex. 1) The Plaintiff timely appealed the decision and a hearing was held on June 12, 2003. The notice informed the Plaintiff that the hearing was “relative to your license denial.” (Ex. 3)
At the hearing the Plaintiff was informed of her right to present any evidence or documents that she wished to produce. (Tr. 1) She was also informed again of her right to have an attorney. (Tr. 2-3) She was also re-informed that the reason for the action was that on May 5, 2003 she attempted to commit a larceny at the Nostalgia Store and that she had admitted to actual larcenies from the store in the past. (Tr. 2)
The evidence adduced at the hearing comprised photos from a video recorder depicting the Plaintiff entering the store, and in the vicinity of the register. Two incident reports narrated her activities. The substance of these reports was that the Plaintiff brought in to the store a receipt for a toy puzzle which had been previously purchased; took a new puzzle off the shelf at the store; and attempted to exchange it for a different puzzle. Because of some previous conduct by the Plaintiff, a store employee was suspicious of the Plaintiffs conduct on this occasion and confronted the Plaintiff. The Plaintiff then stated that she had: left the puzzle (pi*esumably the old one to be exchanged) in her vehicle. The manager requested that the Plaintiff leave the premises and that she not return. The previous conduct mentioned consisted of the Plaintiffs attempts to take items from the store under the pretense that she had previously paid *358 for them when she had not. The store manager reported the incidents to the Defendant’s security department, which investigated the incidents.
The investigators took statements from store employee’s detailing the above, and reviewed a video tape depicting the Plaintiff entering the store “empty-handed” and then attempting to exchange a puzzle that she picked up from the shelf.
The Plaintiff was interviewed and gave a statement, (in the words of the statement, “of my own free will, knowing that is an accurate account of any and all facts,”) in which she admitted that “[w]hile I was in the store I attempted to steal a puzzle.” She also admitted that “I also in the past removed items from the Nostalgia by telling them that I had purchased the items when I really did not.” (Ex. 9)
Of note, at the hearing the Plaintiff read from a statement which she brought with her to the hearing, and in which she stated “I do not deny my actions and I accept full responsibility. My actions are inexcusable and I would like to apologize for the inconvenience that I have caused to all concerned ... I would like to pay full restitution for the items taken ...” (Tr. 22, 24; Ex. H) During the hearing the Plaintiff further admitted that she went into the store with a receipt, took a puzzle off the rack and looked to exchange that item. (Tr. 28) She also admitted that she had previously taken items from the store after misrepresenting that she had paid for them, and that these actions were “inexcusable.” (Tr. 28)
After the hearing on the Plaintiffs Appeal, the Defendant concluded that the Plaintiffs behavior in stealing and in attempting to steal from the store, is inconsistent with the expected behavior of a licensee; brings into question her integrity; poses a threat to the intepity of gaming at the Mohegan Sun; and is disorderly. The Defendant found that the Plaintiff “did intend to steal from the Nostalgia Store on May 5, 2003 and successfully stole merchandise on prior occasions and this conduct warrants a barment and license revocation.”
The Defendant’s order barred the Plaintiff from the Mohegan Sun and revoked her gaming license. This appeal followed.
II.
This appeal is taken pursuant to MTO 2002-13, which is patterned after the Uniform Administrative Appeals Procedure Act, and which provides in part that this “court shall not substitute its judgment for that of the agency [here, the Office of the Director of Regulation (ODR) ] as to the weight of the evidence on questions of fact.” MTO 2002-13, Sec. 3(j). This court must affirm the decision of the ODR, unless the court finds that the Defendant’s “findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.”
On the other hand, this court shall sustain the Plaintiffs appeal if the court finds that the Plaintiff has been prejudiced because the Defendant’s decision is illegal in one of the ways set forth in (1) through (6) above.
III.
With this standard at hand, the court reviews each of the Plaintiffs claims on *359 appeal. The court first takes up the appeal from the bar from the reseivation.
A.
In barring the Plaintiff from the reservation the Defendant relied on Sec. 7(b)(ii) of the Tribal-State Compact pursuant to 25 U.S.C. § 2701 et. seq. This section requires the Tribe to establish a list of persons “barred” because of criminal history or criminal-type associations which “poses a threat to the integrity of the gaming activities of the Tribe.” Such persons, as well as those engaging in disorderly conduct jeopardizing public safety shall be “excluded.” This section would seem to be inapplicable to bar or exclude persons for other reasons, e.g., violation of tribal or gaming policy or procedures or activity. It is not sufficient for barment that the Defendant find that the Plaintiffs activities are inconsistent with expected behavior of a licensee or call into questions her integrity; the activity must also have arisen from a criminal history or criminal-type associations which pose a threat to the integrity of the gaming interest of the Tribe. Here, there was no finding, nor evidence which would support such a finding, of a criminal history or criminal-type associations.
The Defendant did find that the Plaintiffs conduct was “disorderly.” It based this finding on the evidence of the attempted theft and the admitted prior thefts. But that evidence does not support a finding of “disorderly conduct” under the Connecticut General Statutes, Sec. 53a-182 which provides:
(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting or persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse; or (7) commits simple trespass, as provided in section 53a-110a, and observes, in other than a casual or cursory manner, another person (A) without the knowledge or consent of such other person, (B) while such other person is inside a dwelling, as defined in section 53a-100, and not in plain view, and (C) under circumstances where such other person has a reasonable expectation of privacy.
(b) Disorderly conduct is a class C misdemeanor.[1]
There was no evidence to support a finding of “disorderly conduct” as so defined. Therefore the decision barring the Plaintiff from the Casino cannot stand and the appeal is sustained as to such portions of the order appealed from.
B.
The Court now considers each of the Plaintiffs eight arguments in support of her appeal from the order revoking her gaming license.
1. The Plaintiff argues that “minimum due process rights require not only the employee be afforded the right to counsel at a ‘show cause’ hearing, but also *360 be afforded the right to call witnesses on her own behalf,” and that she was not afforded that right. Leaving aside the fact that the hearing was not a “show cause” hearing in the usual sense of the term, and affirming that the Plaintiff certainly has such rights, the court is not persuaded that the Plaintiff was deprived of any due process rights. The notice of decision (Ex. 1) informs her of the charges, her right of appeal, her right to counsel, her right to review the Gaming Commission’s exhibits, her right to obtain a copy of the administrative procedures, and her right to enter the Casino premises to pursue her appeal. At this outset of the hearing, she was advised “if you have anything you want to present as far as evidence or documents that you think are necessary for me [Michael P, Brown, the hearing officer] to see in making this evaluation and determination, then you’ll be able to do so when we come to your opportunity to reply ... Then at that point, if you have anything you want to produce as far as those documents [i.e., those that this Commission might present] I’ll be happy to take them at that point. If you have anything you want to say on your behalf, at that time that certainly will be your opportunity to do so. If you have anything else additional that you think needs to be said, feel free to say so at that time.” She was further advised by Attorney John O’Brien, Commission’s counsel, of her right to have an attorney present, at that time and also her right to request a continuance at that time or at any time during the hearing, at her convenience, to obtain counsel (Tr.1-3). The Court finds that she was expressly advised of and accorded her rights to due process of law. She introduced into the hearing record eight exhibits, including five letters of recommendation, a letter from her physician, her resume, and a handwritten statement which she read during the hearing. She did not deny the substantive allegations; in fact she admitted them. The Plaintiff was afforded all process which was due.
2. The Plaintiff argues that “an employer need not request certain rights if procedure would not allow or such request would be futile. The right to call witnesses or obtain evidence by subpoena is inherently unfair and a violation of her substantive and procedural due process rights” [sic]. The Court is uncertain as to the import of this argument. As noted in B.I., supra, the Plaintiff was expressly informed of her right to produce any evidence that she wished, and she did exercise that right, to whatever extent she desired. She certainly had “the right to call witnesses or obtain certain evidence by subpoena,” and there is no evidence in the record or elsewhere that those rights were abridged.
3. The Plaintiff next claims that “statements taken by a ‘seasoned’ investigator, as in this case, was done under conditions that create a question of coercion. If the statement introduced at the ‘show cause’ hearing was a product of coercion, such as a promise of continued employment, the statement should have been disallowed.” The Plaintiff here refers to Exhibit 9, a statement admitting the essential allegations, and signed by the Plaintiff. In it the Plaintiff stated “I ... gave this statement of my own free will, knowing that it is an accurate account of any and all facts.” There is no evidence in the record or elsewhere of any coercion whatsoever.
At the hearing, the Plaintiff questions the investigator who took the statement: “And do you recall you saying that I was, that you did believe me and your other officer did not believe me at the beginning that you did believe me and that I made a *361 terrible mistake and that you would suggest that I get my job back.
F.H.: That’s correct.
K.D.: Thank you.”
There is however, no evidence, in the record or otherwise, that the Plaintiff made any statement based on any such “suggestion.” The Court finds that there was no coercion, there was no “promise” of continued employment, and that the statement was properly admitted into evidence.
4. The Plaintiffs next claim is that “there were potential criminal charges being considered at the time of the investigation” and that she was not advised of her rights. The short answer to this is that, again, there is no evidence that any such charges were being considered. None were brought, based on the record in this case. The proceeding in question was not a criminal proceeding, and the Plaintiff was fully informed of her due process rights.
5. The Plaintiffs next claim was that “if the evidence that was illegally obtained had not been allowed or no weight had been given to it, the Director of Regulation would not have sustained his burden.” As this court had determined that the evidence was not illegally obtained, and was properly admitted in evidence, the Defendant was entitled to give it such weight as he determined in his discretion. The Plaintiffs admissions in Exhibit 9 were corroborated by her further admission under oath during the hearing (Tr. 28) and by her written statement (Ex. H). The decision of the Defendant was not arbitrary or capricious, or characterized by an abuse of discretion. This court cannot substitute its discretion for that of the Defendant. Wybraniec v. ODR, No. GDTC-AA-03-142 (2004).
6. The Plaintiff’s next claim is that “The Hearing Officer, Michael Brown abused his discretion when reviewing the charging document against the testimony .., The charging document is limited to the ‘attempted larceny’ of May 5, 2003.” This claim is inexplicable. The so-called “charging document” is the notice of May 8, 2003 (Ex. 1) and it expressly based the decision on “your conduct on May 5, 2003 when you attempted to commit a larceny ... [and] you also admitted to actual larcenies from this store in the past.” Both grounds were clearly set forth and both were admitted by the Plaintiff in Exhibit 9, Exhibit H, and in her testimony. This argument is without merit.
7. The Plaintiff next complains of the admission of hearsay in this administrative proceeding. The Plaintiff concedes, as she must, that in an administrative proceeding the strict rules of evidence do not pertain and trustworthy hearsay is admissible. The evidence in this case appears to this court to be both reliable and probative. Wybraniec v. ODR, supra. Contrast, Mac Lean v. ODR, 1 G.D.R. 110, 113, 4 Am. Tribal Law 516, 2002 WL 34461861 (2003), rev’d in part on other grounds, GDCA-AA-03-50G, 5 Am. Tribal Law 273, 2004 WL 5659257 (2004). Not only was such evidence reliable and probative in itself, it was admitted by the Plaintiffs own testimony (Tr. 28), and in her written statement (Ex. H).
An admission by a party of a material fact, whether made in court or elsewhere, is admissible. It is the province of the hearing officer to determine how the truth stands on the facts in controversy on which the admission is claimed to bear. Holden and Daly, Connecticut Evidence, Sec. 103 (1966).
8. The Plaintiffs last claim is that “the photographs [of the Plaintiff inside the store, made from a video tape] introduced were narrated by the witnesses. *362 The tape from which they were made was not introduced. The photographs themselves do not show what the witness’s testimony say they show.”
The photographs were but a small part of the evidence in the case, and the credibility of the witnesses is for the hearing officer to decide. See Wybmniec, op. cit. Even without the photographs there was substantial evidence on which the Defendant based his decision.
IV.
A.
The evidence in the record is not sufficient to support the finding that the Plaintiff engaged in disorderly conduct as that term is defined to C.G.S. Sec. 63a-182. There was no evidence that the Plaintiff has a criminal history or erimi-nal-type associations. Therefore, the Defendant’s order barring the Plaintiff from the Mohegan Sun is vacated and the Plaintiffs appeal from the order so barring her is sustained. See Pennella v. ODR, No. GDTC-AA-03-141, 5 Am. Tribal Law 286, 2004 WL 5660120 (2004).
B.
The evidence in the record amply supports the findings that the Plaintiff attempted to commit larceny at the Nostalgia Store in the Mohegan Sun Mall on May 5, 2003, and that she had previously committed larceny at the same store. Under the Indian Gaming Regulatory Act (The “IGRA”) 25 U.S.C. §§ 2701, et. mj., the Mohegan Tribe adopted an Ordinance, MTO 94-1 The Mohegan Tribal Gaming Ordinance. Section 9 requires that a licensee have no prior activities, criminal record, reputation, habits and associations which pose a threat to the public interest or the interest of the Tribe or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices in the conduct of gaming. See the IGRA, 25 U.S.C. § 2701(b)(2)(F)(ii)(II). After issuance of a license, the Tribe may suspend and revoke the license if a licensee would not be eligible for an initial license. Sec. 11-4.
The Defendant’s finding that the Plaintiffs attempted larceny and prior larceny is inconsistent with expected behavior of a licensee, and calls into question her integrity as a craps dealer, was within the reasonable discretion accorded to the Defendant. The conclusion that this finding warranted the revocation of the Plaintiff’s license cannot be said to be arbitrary, or capricious, or characterized by the abuse of discretion. MTO 2002-12, Sec. 3(j)(6). The Defendant could well conclude that such conduct constituted a threat to the integrity of gaming at the Mohegan Sun, MTO 94-1, Sec. 9; IGRA 25 U.S.C, § 2701(b).
The decision of the Defendant revoking the Plaintiff’s gaming license is affirmed.

. The substantive law of the Mohegan Tribe for application by this Court includes the General Statutes of Connecticut. MTO 95-4, Sec. 301(b).