MICHAEL W. WINSOR *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 27750)

McLachlan, Harper and Rogers, Js.

Argued February 16—officially released June 12, 2007

*Eileen Meskill,* assistant attorney general, with whom were *Nancy E. Arnold,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Robert J. Williams, Jr.,* for the appellee (plaintiff).

*Opinion*

HARPER, J. Connecticut's implied consent law, General Statutes § 14-227b,[1] directs police officers to prepare a written report whenever a person refuses to

---

[1] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license . . . may be suspended in accordance with the provisions of this section if such person refuses to submit to such test . . . and that evidence of any such refusal shall be admissible in accordance with subsection (e) of section 14-227a and may be used against such person in any criminal prosecution, refuses to submit to the designated test, the test shall not be given . . . . The police officer shall make a notation upon the records of the police department that such officer informed the person that such person's license . . . may be suspended if such person refused to submit to such test . . . .

"(c) If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four hour period. The police officer shall prepare a written report of the incident and shall mail the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement . . . by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so . . . ."

submit to a blood, breath or urine analysis. The statute further mandates that "a third person who witnessed such refusal" endorse the report on the incident. The issue in this appeal is whether a third party may "witness" such a refusal by observing it contemporaneously on closed circuit television.[2] The defendant, the commissioner of motor vehicles (commissioner), suspended the license of the plaintiff, Michael W. Winsor, after finding that he refused to submit to a breath test to determine his blood alcohol content. The trial court sustained the plaintiff's administrative appeal of the suspension on the basis of its conclusion that his refusal was not witnessed in accordance with § 14-227b (c). We affirm the judgment of the trial court.

The relevant facts underlying the commissioner's appeal are not in dispute. On the night of October 19, 2005, the plaintiff was arrested in Suffield on suspicion of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[3] After transporting the plaintiff to the Suffield police station, the arresting officer asked the plaintiff to submit to a breath test to determine his blood alcohol content. According to the arresting officer, the plaintiff refused to take any such test. Although the arresting officer was alone in the room with the plaintiff at the time that he allegedly refused to take the breath test, Stacey E. Robins, a police dispatcher, also observed the plaintiff's conduct via closed circuit television.

Subsection (e) (1) allows a motorist to request a hearing before the commissioner concerning the suspension of his or her license. Subsection (i) authorizes the commissioner to order a six month suspension of the motor vehicle operator's license of any person who refuses to submit to a breath or urine test.

[2] Closed circuit television uses one or more video cameras to transmit a magnified image onto a limited number of television monitors in another location.

[3] General Statutes § 14-227a provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

Pursuant to § 14-227b (c), the arresting officer completed an A-44[4] form detailing the circumstances surrounding the plaintiff's refusal to take the breath test. Robins, acting as the statutorily required "witness to [the] refusal," also signed the A-44 form. By affixing her signature, Robins affirmed under oath that the plaintiff "refused to submit to such test or analysis when requested to do so" and that his refusal "occurred in [her] presence." In accordance with § 14-227b (c), the report was sent to the department of motor vehicles (department). Less than one week later, the department notified the plaintiff that it was suspending his license due to his refusal to submit to a breath test.

On November 14, 2005, an administrative hearing was held concerning the suspension of the plaintiff's license for refusing to submit to a breath test. During the hearing, the plaintiff called Robins to testify about her statements in the A-44 form. Robins testified that on October 19, 2005, she was stationed at her console all night because there were no other dispatchers on duty to relieve her. Although she was not physically present in the room with the arresting officer and the plaintiff, Robins confirmed that she had "witnessed" the plaintiff refuse to submit to a breath test via closed circuit television. Further, Robins stated that she had tested the video camera on the day in question to determine whether it was functioning properly.[5]

Following Robins' testimony, the plaintiff objected to the admission of the A-44 form on the ground that Robins did not "witness" the plaintiff refuse to submit to a breath test within the meaning of § 14-227b (c). The

---

[4] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A.2d 1279 (2001).

[5] Curiously, although Robins stated that she "tested" the video camera, she did not state the results of her test.

hearing officer, acting on behalf of the commissioner, overruled the objection and admitted the A-44 form. On the basis of the A-44 form and other documentation regarding the plaintiff's arrest, the hearing officer found, inter alia, that the plaintiff refused to take the breath test.[6] He subsequently ordered a six month suspension of the plaintiff's license.

Pursuant to General Statutes § 4-183,[7] the plaintiff appealed the decision to the court. At a hearing on May 1, 2006, the court sustained the plaintiff's appeal on the basis of its determination that the plaintiff's alleged refusal was not witnessed by a third person for purposes of § 14-227b (c). In a later articulation of its decision, the court quoted this court's statement that § 14-227b (c) "requires, at a minimum, the *presence* of three persons, i.e., the person charged, the arresting officer and a third party witness . . . ." (Emphasis added.) *Mailhot* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 62, 66, 733 A.2d 304 (1999). Relying on this language, the court concluded that Robins could not have witnessed the refusal as required by § 14-227b (c) because she was not "present" in the room. This appeal followed.

We begin by setting forth the standard applicable to our review of administrative decisions. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA),General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an

---

[6] The evidence before the administrative hearing officer included the A-44 form, the results of the plaintiff's breath test indicating "test refused," the plaintiff's booking report, arrest report and accompanying narrative by the arresting officer, the notice of suspension and the plaintiff's birth certificate.

[7] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000).

I

Section 14-227b-19 (a) of the Regulations of Connecticut State Agencies provides that the A-44 form "shall be admissible into evidence at the [suspension] hearing if it conforms to the requirements of subsection (c) of section 14-227b of the General Statutes." Section 14-227b (c) provides in relevant part that the A-44 form "shall be endorsed by a third person who witnessed such refusal. . . ." Here, the hearing officer admitted the A-44 form into evidence despite the plaintiff's objection that it was not endorsed "by a third person who witnessed such refusal." The first issue before this court, therefore, is whether the A-44 form complied with the witnessing requirement contained in § 14-227b (c).

As this question necessarily requires us to interpret the meaning of the word "witnessed" in § 14-227b (c), the issue is one of statutory construction over which we exercise plenary review. See *In re William D.*, 97 Conn. App. 600, 605, 905 A.2d 696, cert. granted on other grounds, 280 Conn. 943, 912 A.2d 479 (2006). Furthermore, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the

apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z[8] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *In re William D.*, supra, 606.

Finally, "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 238–39, 915 A.2d 290 (2007).

---

[8] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

In accordance with these established principles of statutory interpretation, we first examine § 14-227b (c) for any indication as to the meaning of the word "witnessed." In context, that portion of § 14-227b (c) provides that "[i]f the person arrested refuses to submit to such test or analysis . . . [t]he police officer shall prepare a written report of the incident and shall mail the report . . . to the [d]epartment . . . . The report shall be made on a form approved by the [c]ommissioner . . . and shall be subscribed and sworn to . . . by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. . . ."

Upon review of the statutory language, we agree with the parties that the meaning of the word "witnessed" is unclear as applied to this situation. One could reasonably argue that "witnessing" merely signifies contemporaneous visual observation of an event, including indirect observation through the use of mechanical devices such as a television or a camera. Alternatively, it would be equally reasonable to conclude that "witnessing" an event requires the utilization of other sensory aspects besides vision and, therefore, requires physical presence in the room.

Our conclusion that the word "witnessed" is ambiguous necessitates a further inquiry outside the confines of the statutory language. In the absence of a statutory definition, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Boyd*, 272 Conn. 72, 79 n.5, 861 A.2d 1155 (2004). "Witness" is defined by Black's Law Dictionary (5th Ed. 1979) as meaning: "In general, one who, being present, personally sees or perceives a thing; a beholder, spectator, or eyewitness. One who testifies to what he has seen, heard, or otherwise observed."

The commissioner claims that we should apply the second part of the definition, which does not require physical presence and would thereby permit a person to "witness" an act via closed circuit television. Two considerations, however, convince us that such a broad interpretation of the word "witnessed" must be rejected. First, we are unaware of any other circumstance in which a person who is required by statute to "witness" an act has been permitted to fulfill that obligation by observing contemporaneously via closed circuit television. The absence of any such precedent is significant given the existence of several statutory provisions that mandate that specific acts be "witnessed." See, e.g., General Statutes § 9-248 (secretary of state must give municipal officials "one certificate on which can be certified that party watchers have witnessed the testing and preparing of the [voting] machines"); General Statutes § 19a-286 (c) (commissioner of public health must develop minimum standards for autopsy consent form, including requirement of "documented and witnessed consent"); General Statutes § 22-415f (euthanizing of equine that tested positive for equine infectious anemia "shall be witnessed by the state veterinarian or his agent"); General Statutes § 46b-22 (a) (marriages "witnessed by a duly constituted Spiritual Assembly of the Baha'is" are valid).

Second, interpreting the word "witnessed" so as to not require physical presence would contravene the reason for insisting on a third party witness to the refusal. As this court has noted previously, by creating the witnessing requirement, the legislature sought to avoid a " 'my word against yours' " situation.[9] *Mailhot*

---

[9] Notably, in advocating for the passage of the bill that created this portion of General Statutes § 14-227a (c), Senator Clifton A. Leonhardt stated, inter alia: "Some people have raised the question does this Bill go too far? Is it a little too stringent? And I would like to go through some of the protections that are built into the Bill. . . . In line 113 of the Bill, it provides for two different tests to be given. If there's a refusal the police officer has to say so under oath. It has to be in front of a third party so it's not something

v. *Commissioner of Motor Vehicles*, supra, 54 Conn. App. 66. Conflicting accounts arise, in part, because of the difficulties inherent in ascertaining when a person is "refusing" to submit to the breath test. "Refusal" is difficult to measure objectively because it is broadly defined as occurring whenever a person "remains silent or does not otherwise communicate his assent after being requested to take a blood, breath or urine test under circumstances where a response may reasonably be expected." Regs., Conn. State Agencies § 14-227b-5.

Because a "refusal" can be accomplished verbally, as well as through conduct; *Tompkins* v. *Commissioner of Motor Vehicles*, 60 Conn. App. 830, 832, 761 A.2d 786 (2000); a third party must, at a minimum, be able to fully see and hear the person in order to reasonably determine whether he or she is "refusing" a breath test. Yet, this obvious need for complete visual and audio monitoring of the person strongly militates against interpreting the word "witnessed" so as to include observation via closed circuit television. When a person is observing via closed circuit television, he or she is completely reliant on the image (and perhaps sound) supplied by the camera in the other room. As a consequence, there is no guarantee that he or she will be able to see and hear fully what is happening. Although it is possible to imagine the perfect scenario—the closed circuit television system has audio capabilities, and the third party is able to adjust the angle of the camera to ensure that the conduct constituting a "refusal" occurs directly in front of the lens—there is no evidence to suggest that this would occur in all circumstances. Indeed, the record here does not indicate whether the closed circuit television supplied sound or whether the

the police officer is making up on his own and then very importantly, the Bill makes provision for an immediate post suspension hearing, in [line] 275 so that the Constitutional due process rights of drivers are protected." 24 S. Proc., Pt. 18, 1981 Sess., pp. 5672–73.

plaintiff was facing the camera and fully visible to Robins at the time of his alleged refusal.

Because of the numerous variables affecting one's ability to observe an act over closed circuit television, there would always be a substantial danger that the third party would be unable to hear or even see the person at the moment of refusal. Accordingly, allowing a third party to "witness" the refusal over closed circuit television would be clearly inadequate to fulfill the legislative directive that a third party verify that a "refusal," in fact, occurred.

The trial court concluded that physical presence was required due to this court's utilization of the word "presence" in describing the circumstances under which other refusals have been "witnessed" properly under the statute. Specifically, in *Mailhot* v. *Commissioner of Motor Vehicles*, supra, 54 Conn. App. 62, this court held that "§ 14-227b (c), where there is a refusal to take the test by a party arrested, requires, at a minimum, the *presence* of three persons, i.e., the person charged, the arresting officer and a third party witness, who may or may not be the same person who took the arresting officer's oath." (Emphasis added.) Id., 66. Later, in *Lomen* v. *Commissioner of Motor Vehicles*, 61 Conn. App. 213, 763 A.2d 676 (2000), we relied on *Mailhot* and concluded that an A-44 form was witnessed properly because "three people were *present* during the testing . . . ." (Emphasis added.) Id., 217.

Both of those cases involved the total number of people needed to satisfy the witnessing requirement rather than their spatial proximity at the time of the refusal. Nevertheless, our repeated, albeit passing, references to a third party's "presence" strongly indicates that "witnessing" has been, and should be, understood to mean physical attendance in the room. Stated differently, we find those cases instructive insofar as they

suggest the most natural meaning of the word "witnessed."

Moreover, as the plaintiff asserts in his brief, this court has not been alone in using words connoting presence when discussing the witnessing requirement. The A-44 form itself requires the third party who witnessed the refusal to affirm under oath that it "occurred in [his or her] presence." Furthermore, Senator Clifton A. Leonhardt, who was one of the primary advocates of the bill that added this portion of the statute, described the witnessing requirement as meaning the following: "If there's a refusal the police officer has to say so under oath. It has to be *in front of* a third party so it's not something the police officer is making up . . . ." (Emphasis added.) 24 S. Proc., Pt. 18, 1981 Sess., p. 5673. Being "in front of" someone usually connotes physical presence. It certainly cannot mean observation via closed circuit television, at least under circumstances in which there is no assurance that either the arresting officer or the person will be facing the camera.

The commissioner argues in his brief that "[a] reasonable and plausible description of [Robins'] observance of [the] plaintiff's refusal was that she was constructively present by viewing it live, via closed circuit television." Even if we assume for the sake of argument that "constructive presence" could potentially fulfill the witnessing requirement, there is no factual basis in this record to support such a conclusion. Robins did not describe the circumstances attendant to her observation of the plaintiff and the arresting officer. Counsel for the plaintiff merely asked Robins whether she "witness[ed] the refusal via video camera," and she responded affirmatively. The record in this case does not reveal whether the plaintiff was facing the camera at the time of his alleged refusal to take the test. There are also no details concerning the placement of the camera in the room and the resulting scope of visual

coverage. Moreover, there is no indication as to whether the closed circuit television system had audio, as well as visual, capabilities or whether the image supplied thereby was in color or black and white. In the absence of these critical facts, it cannot be reasonably asserted that Robins was "constructively present" in the room with the plaintiff and arresting officer.

On the basis of all of these considerations, we hold that watching the plaintiff's alleged refusal via closed circuit television did not constitute "witness[ing] such refusal" within the meaning of § 14-227b (c).[10] Accordingly, we turn to the question of whether the hearing officer's admission of the A-44 form into evidence was nonetheless proper. "Administrative tribunals are not strictly bound by the rules of evidence . . . so long as the evidence is reliable and probative." (Internal quotation marks omitted.) *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 397, 786 A.2d 1279 (2001). Furthermore, "[t]he plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Id.

"Compliance with § 14-227b (c) is designed to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer. . . . If the report [does] not include such indicia of reliability, the report [is not] admissible even before an administrative tribunal of this type." (Citation omitted;

---

[10] As we have explained, our holding is predicated on the common understanding of the word "witnessed," as well as the most logical interpretation of the word in light of its statutory purpose. The legislature is, of course, free to amend General Statutes § 14-227b (c) so as to expressly permit a third party to "witness" a refusal by closed circuit television or some other means.

internal quotation marks omitted.) *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 712, 692 A.2d 834 (1997). Because § 14-227b (c) is tailored to satisfy an exception to the hearsay rule, a failure to comply with the witnessing requirement renders the A-44 form inadmissible, at least in the absence of direct testimony from the arresting officer. See *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987); Regs., Conn. State Agencies § 14-227b-19 (a).

Here, the arresting officer did not testify at the license suspension hearing, and the witnessing requirement of § 14-227b (c) was not satisfied. As a result, the A-44 form should not have been admitted at the suspension hearing.[11]

II

The inquiry cannot end, however, with our conclusion that the A-44 form was not properly witnessed and was consequently inadmissible at the license suspension hearing. Even in the absence of the A-44 form, "[i]f the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." (Internal quotation marks omitted.) *Bialowas* v. *Commissioner of Motor Vehicles*, supra, 44 Conn. App. 709. As such, there is still the question of whether the remainder of the record supplies reliable, probative and substantial evidence to support the hearing officer's decision to suspend the plaintiff's license. We conclude that it does not.

"Substantial evidence exists if the administrative record affords a substantial basis of fact from which

---

[11] The commissioner also claims that Robins' lack of physical presence in the room was immaterial if the plaintiff was afforded all of the procedural and substantive process that he was due under the circumstances. This argument is misplaced, however, because relying improperly on an inadmissible report to suspend a person's license *necessarily* constitutes a violation of due process.

the fact in issue can be reasonably inferred. . . . The evidence must be substantial enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it." (Citations omitted; internal quotation marks omitted.) Id.

After excluding the A-44 form, only three evidentiary sources remain in the record to support the hearing officer's finding that the plaintiff refused to submit to the breath test: (1) the printout from the Intoxilyzer that reads "test refused," (2) Robins' testimony at the hearing that she "witnessed" the plaintiff refuse the test via closed circuit television and (3) the arresting officer's statements in his narrative supplement to the arrest report that "[t]he implied consent advisory form was explained to the [plaintiff]" and "[t]he [plaintiff] refused to take the breath test."

Although all of these three sources of evidence indicate that the plaintiff refused to submit to the breath test, none provide any information about the circumstances supporting that conclusion. Neither the arresting officer nor Robins described what behavior on the part of the plaintiff led them to infer that he was refusing the breath test. Without any facts or details to buttress that inference, we have no basis on which to conclude that substantial evidence supports the hearing officer's determination.

In that regard, this case is analogous to *Bialowas* v. *Commissioner of Motor Vehicles*, supra, 44 Conn. App. 702, in which this court was confronted with a desolate record consisting of only: (1) the police report's statements that the first intoximeter test was "aborted" and

that the motorist's "refusal" was witnessed by a second officer, (2) the intoximeter result tape that read "insuff. breath" and (3) the arresting officer's notation in his narrative supplement that the motorist "was very uncooperative and would not sign any necessary papers." (Internal quotation marks omitted.) Id., 715. Upon close examination of the statements contained in the narrative supplement, we observed that it was unclear exactly what the arresting officer was referring to in his statement that the motorist was "very uncooperative." (Internal quotation marks omitted.) Id., 716. We noted further that "[t]he police officer's *opinion* that the plaintiff did not blow forcefully enough into the machine . . . is only a conclusion without any underlying, stated *factual* basis in the record." (Emphasis in original; internal quotation marks omitted.) Id. As a consequence, even when coupled with the intoximeter tape and the statements in the police report, this court was forced to conclude that substantial evidence did not exist in the record to support a finding of refusal. Id., 717.

In this case, as in *Bialowas*, the blanket assertions of refusal by the arresting officer and Robins are mere conclusions without any underlying, stated *factual* basis in the record. See id., 716. As such, notwithstanding "our endeavor to rid our roads of [drunken] drivers"; (internal quotation marks omitted) id., 718; we conclude that the evidence remaining in this record does not support the determination of the hearing officer that the plaintiff "refused" to submit to the breath test in violation of § 14-227b. We therefore affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.